COUNTY OF DANE, Plaintiff-Appellant, v. DEPARTMENT OF HEALTH & SOCIAL SERVICES, Defendant-Respondent.

*No. 75–348. Argued February 1, 1977.—Decided July 1, 1977.*
(Also reported in 255 N. W. 2d 539.)

For the appellant the cause was argued by *Robert M. Hesslink, Jr.*, assistant corporation counsel, with whom on the briefs was *Glenn L. Henry*, corporation counsel.

For the respondent the cause was argued by *Ward L. Johnson*, assistant attorney general, with whom on the brief were *Bronson C. La Follette*, attorney general, and *Charles D. Hoornstra*, assistant attorney general.

A brief amicus curiae was filed for Wisconsin County Boards Association by *Thomas A. Schroeder*, legal counsel, and *Robert Mortensen*, executive director.

DAY, J.   Dane County seeks to overturn a judgment of the circuit court which affirmed an order of the Wisconsin Department of Health and Social Services (DHSS).

The question is: Does a county have standing to challenge an administrative rule affecting it that was not promulgated in conformity with the rule-making procedure of Chapter 227 Wisconsin Stats.? We hold that it does.

The facts which give rise to the dispute between the county and DHSS are as follows: Miss D. P. is permanently disabled. In 1974, when the litigation began, D. P. was forty-seven and A. P., her mother, was eighty-seven. Prior to September 1969, D. P. lived in Kenosha, Wisconsin with her mother in a large three room apartment with the aid of visiting nurses and six or seven other attendants a week. D. P. said she managed the apartment and the employees on approximately $700 a month paid by Kenosha County and the State.

In September 1969, D. P. and her mother moved to Madison in order to be close to the University of Wisconsin Hospitals. D. P. and her mother moved to a nursing home in Dane County rather than set up a new apart-

ment. Both women became dissatisfied with the arrangement and desired to return to an independent living situation in Dane County.

D. P. believed the living expenses of her and her mother could be paid for from supplemental security income payments which both received from a Veterans Administration pension to which A. P. was entitled. Both women are eligible for Group I medical assistance benefits. D. P. applied to Dane County Department of Social Services for additional payments to cover the wages of attendant personnel. Based on a thirty day month with personnel on duty twenty-two to twenty-four hours a day at $2.00 per hour, it was estimated this additional cost would be $1,440 per month.

Dane County refused to authorize such payments on the ground they were too expensive. The policy of the county was to allow only $260 per person or $520 for both women per month for social services.

In February 1974, D. P. appealed the county's decision to the Division of Family Services, Department of Health and Social Services (DHSS).[1]

November 11, 1974, the Secretary of DHSS ordered the Dane County Department of Social Services to provide petitioner with the social services required for noninstitutional living if those services were found to cost no more than the cost of institutionalization. The matter was remanded to the county department to compare costs and act accordingly.[2]

The Secretary concluded the county agency "improperly determined that the maximum service payroll payments it would make to provide petitioner with social services necessary to avoid continued institutionalization

[1] Appeal per secs. 49.45(5) and 49.50(8), Stats. 1973.

[2] "ORDERED. That the matter be and the same is hereby remanded to the Dane County Department of Social Services with instructions to review the circumstances of this petitioner so as

would be $260 per month. The Secretary cites portions of the Department's Income Maintenance and County Administration Manuals, both of which indicate a strong policy in favor of avoiding institutionalization.

The Secretary wrote,

"Section II, contained in Chapter III, part E, page 5, of this Department's Income Maintenance Manual, states under, 'Mandatory Social Services':

" 'Whatever social services are necessary to prevent institutionalization of an individual or removal from his or her own home, (such as placement in county home, hospital, extended care facility, intermediate care facility, residential care facility or nursing home) shall be provided. *THIS IS A MANDATORY REQUIREMENT FOR ALL COUNTIES.* The services must be acceptable to the client and the client must be competent to make the decision.'

" . . .

"Page 2, part A, Chapter II of this Department's County Administration Manual provides:

" 'Necessary social services shall be provided or purchased for actual, former and potential recipients of AFDC and SSI when such services will prevent institutionalization of the client or removal from his or her own home (i.e., placement in a county home, hospital, extended care facility, intermediate care facility, residential care facility or nursing home). *THIS IS A MANDATORY REQUIREMENT FOR ALL COUNTIES.* The services must be acceptable to the client or his representative if the client is not competent to make the decision.' "

Were the petitioner not a resident in a nursing home, the Secretary reasoned, she would be entitled to the services enumerated in the cited manual sections. (It is agreed

---

to determine whether the net cost of institutionalization exceeds the total cost of social services necessary to permit petitioner to reside in an independent living arrangement plus petitioner's supplemental security income, and if so, to provide petitioner with those social services."

by the parties that the reference to "petitioner" applies to both D. P. and her mother.) The fact that she is a resident in a nursing home should have no substantial effect on her eligibility for social services should she leave the home, he wrote. But the Secretary also interpreted the County Administration Manual to mean that the maximum net cost of preventing institutionalization should be no more than the net cost of institutionalization.

Appeal was taken to the circuit court of Dane County and on May 5, 1975, a decision and judgment were entered affirming the order of DHSS. In the circuit court the county had two principal contentions. First, it argued that the DHSS manuals which expressed a preference for non-institutional living and were relied on by the DHSS were not adopted in conformity with the rule making procedures specified in c. 227, Wis. Stats.[3] The second argument was that the agency erred in comparing the net cost of institutionalization with the net cost of outpatient services wihout considering whether the county would be entitled to cost reimbursement in the same manner for each. Services in the nursing home were reimbursed according to a sum-sufficient appropriation whereas the outpatient services were reimbursed according to a sum-certain formula.[4] Dane County would have to pay the costs in excess of $260 each.

The trial court determined that the county did not have standing to challenge the rule-making procedure employed by the DHSS; and it further found that the DHSS did have authority to order the county agency to consider noninstitutional living for the petitioner. The

---

[3] All statutory references herein are to 1973 Statutes.

[4] The trial court cites sec. 20.435(4)(c), Stats., the sum-sufficient appropriation for medical assistance in the nursing home, and sec. 20.435(4)(dh), Stats., the sum-certain appropriation for social services provided outside the institution.

court expressly avoided the question of the possible outcome if a person other than the county challenged the rule-making procedure. The court noted the county did not allege it was in fact without the funds to comply with the order.

There is no dispute the provisions in the manuals relied on by the DHSS were rules[5] within the meaning of sec. 227.01(3), Stats.[6] The manuals are not part of the record on appeal.

The county alleges that in adopting the manuals the DHSS failed to conduct a hearing as required by sec. 227.02 Stats.; that the rules were not filed with the Secretary of State as required by sec. 227.023, Stats.; and that the rules were not published in the Wisconsin Administrative Code, as required by sec. 227.025, Stats. The trial court so found. However, if the rules were promulgated merely to comply with federal requirements no hearing was required.[7]

This court recently reaffirmed the principle that counties are creatures of the Legislature and their powers must be exercised within the scope of authority ceded to

[5] See *Will v. Department of Health & S. S.*, 44 Wis.2d 507, 517, 171 N.W.2d 378 (1969).

[6] "227.01 *Definitions.* . . . (3) 'Rule' means a regulation, standard, statement of policy or general order (including the amendment or repeal of any of the foregoing), of general application and having the effect of law, issued by an agency to implement, interpret or make specific legislation enforced or administered by such agency or to govern the organization or procedure of such agency. . . ."

[7] "227.02 *When Hearings Required.* (1) An agency shall precede all its rule making with notice and public hearing unless:
" . . .
"(b) The proposed rule is designed solely to bring the language of an existing rule into conformity with a statute which has been changed or adopted since the adoption of such rule, to bring the language of an existing rule into conformity with a controlling judicial decision, or to comply with a federal requirement. . . ."

them by the state, *State ex rel. Conway v. Elvod*, 70 Wis. 2d 448, 234 N.W.2d 354 (1975). The Legislature's authority to regulate the powers of a county are found in Art. IV, sec. 23, Wis. Const. *State v. Sylvester*, 26 Wis.2d 43, 132 N.W.2d 249, 253 (1965). In governmental matters, the county is simply the arm of the state; the state may direct its action as it deems best and the county cannot complain or refuse to obey. *McDougall v. Racine County*, 156 Wis. 663, 146 N.W. 794 (1914). *Madison Metropolitan Sewerage District v. Committee on Water Pollution*, 260 Wis. 229, 50 N.W.2d 424 (1951). The county exists in large measure to help handle the state's burden of political organization and civil administration. *State v. Mutter*, 23 Wis.2d 407, 127 N.W.2d 15, 18 (1964), *appeal dismissed*, 379 U.S. 201. But as a creature of the state, it is not permitted to "censor or supervise" the activities of its creator. *Marshfield v. Cameron*, 24 Wis.2d 56, 63, 127 N.W.2d 809 (1964).

A corollary stemming from these principles and expressed in *Columbia County v. Board of Trustees*, 17 Wis.2d 310, 116 N.W.2d 142 (1962) is the traditional rule that a county does not have the legal right or status as against the state or another state agency to contest the constitutionality of a statute.

"A county as a quasi municipal corporation and as an arm of the state has no right to question the constitutionality of the acts of its superior and creator or of another arm or governmental agency of the state. A county or a governmental agency is created almost exclusively in the view of the policy of the state at large for purposes of political organization and civil administration in matters of state concern. McQuillin, Municipal Corporations, Vol. 1, sec. 112, Young v. Juneau County (1972), 192 Wis. 646, 212 N.W. 295." 17 Wis.2d at 317.

This no-standing rule is applicable to municipal corporations in general. *Joint School District No. 1 of Town of*

*Wabeno v. State*, 56 Wis.2d 790, 203 N.W.2d 1, 2 (1973); *Town of Germantown v. Village of Germantown*, 70 Wis. 2d 704, 235 N.W.2d 486 (1975); *City of Kenosha v. State*, 35 Wis.2d 317, 330, 151 N.W.2d 36 (1967); *Douglas County v. Industrial Commission*, 275 Wis. 309, 81 N.W.2d 807 (1957). The no-standing rule is subject to certain exceptions which apply only to cases between private litigants and a municipality or state agency and not to suits between agencies of the state, or between an agency or municipal corporation and the state. *City of Kenosha, supra*, 35 Wis.2d at 331; *State ex rel. La Crosse v. Rothwell*, 25 Wis.2d 228, 233, 130 N.W.2d 806, 131 N.W.2d 699 (1964).

The county argues the P's, and not the DHSS are the real parties in interest in this case and therefore the exceptions to the no-standing rule may be applied. We believe, however, that although the P's may or may not benefit by its outcome, this suit concerns the power of the DHSS in relation to the county, and not the rights of the P's. Thus, the exceptions to the no-standing rule, *Town of Germantown, supra*, cannot be applied in this case.

This court has specifically held that in a case between a state agency and a municipal corporation, the constitutionality of a statute may not be questioned by either party. *City of Eau Claire v. DNR*, 60 Wis.2d 751, 752, 210 N.W.2d 771 (1973). *Columbia County v. Board of Trustees, supra*.

But the authority of a county to challenge the procedure by which a rule is promulgated is different in character from a challenge to a legislative enactment or to a discretionary act by an agency acting under delegated powers. Here the county does not challenge the mandate of its creator. Nor does it attack supervisory powers of the agency. Rather, the challenge raises the question whether the agency has itself complied with the express

provisions of the Legislature which, in C. 227, Stats., has set forth the manner by which administrative rules must be promulgated. Were the county denied standing in a situation involving a rule directly affecting it, the practical effect would be that the only likely party to enforce the C. 227 rule-making provisions in the courts would be prevented from doing so. The net result of such a no-standing rule would be a judicially created road block to vindicating legislative requirements. We decline to take this path.

This action was brought before the circuit court pursuant to secs. 227.15 and 227.16, Stats.[8] Sec. 990.01(26) defines a "person" as including bodies politic and corporate; consequently a county may be a "person aggrieved" under sec. 227.16.

By provision of sec. 227.05(2)(e),[9] the rules in question may be challenged. Although this issue was not

---

[8] "227.15 *Judicial Review; Orders Reviewable.* Administrative decisions, which directly affect the legal rights, duties or privileges of any person, whether affirmative or negative in form, except the decisions of the department of revenue, the commissioner of banking and the commissioner of savings and loan, shall be subject to judicial review, as provided in this chapter, but if specific statutory provisions require a petition for rehearing as a condition precedent, review shall be afforded only after such petition is filed and determined."

"227.16 *Parties and Proceedings For Review.* (1) Except as otherwise specifically provided by law, any person aggrieved by a decision specified in s. 227.15 and directly affected thereby shall be entitled to judicial review thereof as provided in this chapter. . . ."

[9] "227.05 *Declaratory Judgment Proceedings.* . . . (2) The validity of a rule may be determined in any of the following judicial proceedings therein: . . . (e) Proceedings under ss. 227.15 to 227.21 or under chapter 102 or 108 for review of decisions and orders of administrative agencies provided the validity of the rule involved was duly challenged in the proceeding before the agency in which the order or decision sought to be reviewed was made or entered."

raised in the proceedings before the agency, there was no indication at that time DHSS was relying on the program manuals ultimately cited by it in its order to the county. We therefore hold the instant challenge is timely.

This opinion should not be construed as giving a county license to challenge the policies or other discretionary acts made by an agency under its delegated powers. We do hold the county has standing to challenge the validity of a rule that is not adopted in conformity with secs. 227.02 through 227.025, Stats. 1973.

*By the Court.*—Judgment reversed and cause remanded with directions to reverse the order of the Department of Health and Social Services.