WILLIAM G. THIEL, Corporation Counsel Eau Claire County
You ask:
 Does Section 59.025 (3) (b) grant the authority to Eau Claire County to alter the number of members and membership upon the Eau Claire County Housing Authority?
The answer to your question is no. The powers of counties must be exercised within the scope of the authority ceded to them by the state. Dane County v. H SS Dept., 79 Wis.2d 323,255 N.W.2d 539 (1977). In my opinion, sec. 59.025, Stats., does not authorize the Eau Claire County Board of Supervisors, expressly or by implication, to alter the number of commissioners of the county housing authority in your county or the terms of office of such commissioners, as established by sec. 66.40 (5)(a), Stats.
In my opinion none of the provisions of sec. 59.025, Stats., giving to county boards of supervisors the authority to "consolidate, abolish or re-establish any county office, department, committee, board, commission, position or employment," apply to a county housing authority or its officers and employes. The powers granted to county boards of supervisors under sec. 59.025, Stats., are intended to apply only to the "administrative structure of county government." Sec. 59.025 (1), Stats. A county housing authority is not a part of the administrative structure of county government. As earlier pointed out in 37 Op. Att'y Gen. 626, 627 (1948), a housing authority "is an independent autonomous unit." And, as stated more recently, in 64 Op. Att'y Gen. 106, 108 (1975):
 Section 66.40 (4), Stats., provides that when a housing authority is created it is a "public body corporate and politic." *Page 36 
In 62 Op. Att'y Gen. 333 [303] (1973), it was stated that such authority is not an arm, department, or agency of the municipality which created it but is an independent entity separate and distinct from such municipality. 45 Op. Att'y Gen. 180 (1956); 37 Op. Att'y Gen. 626 (1948).
See sec. 66.40 (4)(a) and (9), Stats.
Thus, sec. 59.025 (3), Stats., only applies to "county" departments, committees, boards, officers, positions or employment. Since, as previously stated, the housing authority is completely independent of and distinct and separate from the county, it can hardly be termed a "county" department, etc., nor can its officers or employes be termed "county" officers or employes, under the provisions of sec. 59.025 (3), Stats. This conclusion is consistent with the various provisions of secs. 66.40 to 66.404, Stats., which detail a housing authority's organization and operation. For instance, sec. 66.40 (5)(a), Stats., which provides that the principal officers of each housing authority are the five persons appointed as commissioners of the authority, also requires that no more than two of the commissioners may also be officers of the county in which the authority is created. It is, therefore, obvious that housing authority commissioners are not considered county officers. Likewise, sec. 66.40 (5)(c), Stats., provides that an authority may employ such "officers, agents and employes, permanent and temporary, as it may require, and shall determine their qualifications," despite the fact that, if authority employes were appointive county officers or employes, such provision would be made unnecessary by the provisions of sec. 59.15 (2), Stats. Similarly, under sec. 66.40 (9)(t), Stats., it is the housing authority, not the county, which determines whether the authority will participate in the employe retirement or pension system of the county.
In addition, ch. 118, Laws of 1973, which created sec. 59.025, Stats., also amended a companion statute, sec. 59.15 (2)(a), Stats., to read, in part:
 Appointive officials, deputy officers and employes. (a) The board has the powers set forth in this subsection, sub. (3) and s. 59.025 as to any office, department, board, commission, committee, position or employe in county service (other than elective offices included under sub. (1), supervisors and circuit *Page 37 
judges) created under any statute, the salary or compensation for which is paid in whole or in part by the county . . . .
Under the terms of this statute, sec. 59.025, Stats., would not appear applicable to county housing authorities, since the salaries of the officers and employes of a county housing authority are paid by the authority and are not "paid in whole or in part by the county." See 64 Op. Att'y Gen. 106, 108 (1975).
Finally, sec. 59.025, Stats., is "subject to . . . such enactments of the legislature of statewide concern as shall with uniformity affect every county." Sec. 59.025 (2), Stats. Section 66.40 (2), Stats., in turn, specifically declares that the subject matter of secs. 66.40 to 66.404, Stats., is "of state concern" and that "the necessity in the public interest for the provisions hereinafter enacted, is declared as a matter of legislative determination." Section 66.40 (6), Stats., also provides that the housing authority and its commissioners "shall be under a statutory duty to comply or to cause compliance strictly with all provisions of sections 66.40 to 66.404 and the laws of the state." Section 66.40 (5)(a) and (b), Stats., provides that five persons "shall" be appointed commissioners and that, after the initial term, their term of office "shall be five years."
Although not all counties may have a housing authority, secs. 59.075 and 66.40 to 66.404, Stats., may nevertheless be said to uniformly affect every county, in the sense that the creation of a housing authority is required in every county where the county board has found the adverse housing conditions identified in those statutes to exist. Arguably, since under sec. 66.40 (2), Stats., the Legislature has found that insanitary or unsafe housing exists in the state and that there is a shortage of safe or sanitary low income housing in the state, the role of the local government under sec. 66.40, Stats., is not to create a housing authority but only to identify whether either of these conditions exist within the particular local governmental unit. If a governing body finds that insanitary or unsafe housing exists in the community or that there is a shortage of safe or sanitary low income housing, subsec. (4)(b) of the statute does provide that the governing body "shall adopt a resolution declaring that there is need for a housing authority" in the governmental unit. Subsection (4) (a), Stats., further states that upon adoption of that resolution "a public body corporate and politic shall then exist" and it "shall then be authorized to transact business and exercise any powers herein *Page 38 
granted to it." Therefore, while the creation of a housing authority is dependent upon an initial finding of fact by the governing body, once that finding is made, all else is mandated by the statute and a separate public housing corporation is created for the governmental unit by the statute.
BCL JCM