HERITAGE CREDIT UNION, Petitioner-Appellant,†

v.

OFFICE OF CREDIT UNIONS, Respondent-Respondent.

Court of Appeals

*No. 00–3162. Submitted on briefs June 11, 2001.—Decided August 2, 2001.*

2001 WI App 213

(Also reported in 634 N.W.2d 593.)

† Petition to review denied 10-23-01.

591

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Jerard J. Jensen, Thomas M. Pyper,* and *Jeanne M. Armstrong* of *Whyte Hirschboeck Dudek S.C.* of Madison.

On behalf of the respondent-respondent, the cause was submitted on the brief of *James E. Doyle, Attorney General,* and *Stephen J. Nicks, Asst. Attorney General.*

Before Vergeront, P.J., Roggensack and Lundsten, JJ.

¶ 1. VERGERONT, P.J. This appeal concerns the applications of Heritage Credit Union, chartered by the State of Illinois, to operate four branch offices in Wisconsin. The Office of Credit Unions (OCU) for the State of Wisconsin denied the applications. It applied its general reciprocity policy for credit unions incorporated under the laws of other states (foreign states) and decided that, since Wis. Stat. § 186.113(1) (1999–2000)[1] limits branch offices for Wisconsin credit unions to

---

[1] Wisconsin Stat. § 186.113(1) provides:

> Branch offices. If the need and necessity exist and with the approval of the office of credit unions, establish branch offices inside this state or no more than 25 miles outside of this state. Permanent records may be maintained at branch offices established under this subsection. In this subsection, the term "branch office" does not include a remote terminal, a limited services office or a service center.

592

twenty-five miles outside of Wisconsin, Heritage could not operate branch offices in Wisconsin more than twenty-five miles from the Wisconsin border. The Credit Union Review Board affirmed the denial and the circuit court affirmed the board. Heritage appeals, contending: (1) because Heritage was formerly a federal credit union, federal law preempts any restrictions on Heritage's ability to operate branch offices in Wisconsin; (2) OCU does not have the statutory authority under Wisconsin law to regulate foreign state credit unions, and even if OCU does have that authority, it does not have the authority to restrict whether or where they may operate branch offices; (3) OCU's decision is based on a policy that is invalid because it was not promulgated as a rule under WIS. STAT. ch. 227; and (4) OCU's decision is an unreasonable application of OCU's reciprocity policy.

¶ 2. We conclude: (1) OCU's decision does not conflict with federal law and therefore does not violate the supremacy clause; (2) OCU has the statutory authority to regulate foreign state credit unions operating in Wisconsin, including the authority to regulate whether and where they may operate branch offices; (3) Heritage may not obtain judicial review of its rule-making argument because it did not raise this before the board as required by WIS. STAT. § 227.40(2)(e); and (4) the board acted reasonably and within its discretion in deciding that OCU's decision was a reasonable application of its reciprocity policy. We therefore affirm.

All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

## BACKGROUND

¶ 3.　The pertinent facts are not disputed. Heritage operated in Wisconsin as a federally chartered credit union until December 4, 1998, when it converted to an Illinois-chartered credit union. Heritage asked the Illinois regulatory agency to include the Wisconsin communities of Dane, Columbia, Rusk, Barron, and Chippewa counties in its "field of membership." Accordingly, the Illinois Credit Union Division supervisor wrote the OCU asking about the requirements Heritage must satisfy in order to add those counties to its "field of membership." OCU responded that Heritage would not be permitted to expand to include those counties. It explained that, because Heritage had an Illinois charter, its principal office could not be located in Wisconsin, and community expansions were based on a "well-defined neighborhood, community or rural district in relation to a credit union's principal office." OCU also explained that the Wisconsin Credit Union Review Board policy guidelines[2] require that a credit union chartered and operating under the laws of another state must obtain a certificate of authority for a branch office to operate in Wisconsin, and it enclosed an "Application to Establish a Subsidiary Office."

¶ 4.　Heritage submitted an application for each of the four locations—two in Madison, one in Chetek, and one in Ladysmith. Heritage had operated offices at

---

[2] The "Wisconsin Credit Union Review Board Policy Guidelines—Community Field of Membership and Related Issues" provide guidelines to the OCU for ruling on requests by Wisconsin credit unions to expand their fields of membership. One of the "general policy guidelines" provides in part, "The Director [of the OCU] is encouraged to allow reciprocity in considering requests of foreign state credit unions wishing to define portions of Wisconsin in their fields of membership."

these locations as a federal credit union. OCU denied the applications in a letter that stated:

> Chapter 186, Wis. Stats., does not address reciprocal branching authority for out of state, state-chartered credit unions. Because of reciprocity requirements of other states, it has been the position of this office to issue a statement of reciprocity or approve requests from out of state credit unions as long as the authority requested meets the criteria for powers established by statute for Wisconsin credit unions.
>
> Wisconsin credit unions are allowed to establish branch offices 25 miles outside this state. They are also allowed to establish limited services offices outside this state if the common bond among the members of the credit union establishing the limited services office is employment by a corporation, limited liability company, partnership or association which maintains an office or other facility in this state.
>
> Per the application information you submitted, the above parameters are not met.

¶ 5. Heritage filed a petition with the board for review of OCU's decision.[3] It contended: (1) OCU's

---

[3] WISCONSIN STAT. § 186.015(5) provides:

REVIEWS. Any interested person aggrieved by any act, order or determination of the office of credit unions that relates to credit unions may, within 60 days after the date of the act, order or determination, apply for review by the review board. The review board shall determine if the office of credit unions acted within the scope of the office's authority, has not acted in an arbitrary or capricious manner and has based the act, order or determination on evidence supported by the record. The review board shall dispose of a review application within 60 days after the date on which it is received, unless the review board designates a hearing examiner, in which case the review board shall dispose of the review application within 180 days after the date on which it is received.

denial of its applications conflicts with the Federal
Credit Union Act and is therefore invalid under the
supremacy clause; (2) OCU does not have the statutory
authority under Wisconsin law to regulate foreign state
credit unions generally and, even if it does, it does not
have the authority to restrict whether or where in
Wisconsin Heritage may operate branch offices; and (3)
OCU's decision is unreasonable because, since Wisconsin credit unions may operate anywhere in Illinois, true
reciprocity means that an Illinois credit union may
operate anywhere in Wisconsin.[4]

¶ 6. Heritage and OCU stipulated there were no
factual issues in dispute and submitted briefs to the
hearing examiner. The examiner issued a proposed
decision and order affirming the denial of the applications, and the board adopted that decision and order
after considering Heritage's objections.[5] The board concluded that: (1) OCU's denial of the applications did
not conflict with federal law; (2) OCU has the authority
under WIS. STAT. ch. 186 to regulate foreign state credit
unions operating in Wisconsin, and that includes the
authority to regulate their operation of branch offices in
Wisconsin; and (3) OCU's application of its reciprocity
policy to branch offices is reasonable.

---

[4] Heritage also argued that WIS. STAT. § 186.113(1) permitted it to establish branch offices in Wisconsin. The board
decided that section did not apply to Heritage since it is an
Illinois-chartered credit union, and Heritage has not pursued
that argument in this court.

[5] This procedure is provided for in WIS. STAT. § 227.46(1)
and (2).

¶ 7. Heritage sought review of the board's decision in the circuit court,[6] advancing essentially the same three challenges. The circuit court affirmed the board's decision on each point.

## DISCUSSION

¶ 8. On appeal, Heritage renews the arguments it made in the circuit court and, in addition, argues that OCU's decision is based on a policy that is invalid because it is not promulgated as a rule as required by WIS. STAT. ch. 227. We address first Heritage's contention that OCU's denial of the applications violates the supremacy clause because it conflicts with 12 U.S.C. § 1771(a) (1994).[7]

¶ 9. 12 U.S.C. § 1771(a)(4) permits a federal credit union to convert to a credit union incorporated under the laws of any state and provides that the successor state credit union "shall be vested with all of the assets and shall continue [to be] responsible for all of the obligations of the Federal credit union to the same extent as though conversion had not taken place." According to Heritage, this statute means that since

---

[6] Under WIS. STAT. § 186.015(6)(b), any final order of the board is subject to review in the manner provided in WIS. STAT. ch. 227.

[7] The supremacy clause, U.S. CONST. art. VI, cl. 2, provides in part:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

Congressional enactments override those state laws with which they conflict. *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 300 (1988).

Heritage had offices in Wisconsin and operated there while a federal credit union, it has the right to continue to operate those offices in Wisconsin in the same manner it did before it converted to an Illinois credit union. OCU responds that this statute means only that Heritage retains ownership of the assets it owned while a federal credit union after it converts to a state credit union, and the statute does not address the regulation of Heritage's operation of its business after conversion.

██

¶ 10. When an administrative agency's decision is challenged, this court reviews the agency's decision and applies the same standard of review as that which should be applied by the circuit court. *Citizens' Util. Bd. v. Public Serv. Comm'n*, 211 Wis. 2d 537, 543–44, 565 N.W.2d 554 (Ct. App. 1997). The proper interpretation of 12 U.S.C. § 1771(a)(4) presents an issue of statutory construction—a question of law which we generally review de novo. *See Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 659, 539 N.W.2d 98 (1995). While we may give deference to a state administrative agency's interpretation of a statute that it is authorized to administer,[8] we are concerned here with a federal statute. Neither party addresses whether it is appropriate to defer to the board's interpretation of this federal stat-

---

[8] We give great weight to the agency's interpretation when:

> (1) the agency was charged by the legislature with the duty of administering the statute; (2) . . . the interpretation of the agency is one of long-standing; (3) . . . the agency employed its expertise or specialized knowledge in forming the interpretation; and (4) . . . the agency's interpretation will provide uniformity and consistency in the application of the statute.

*UFE Inc. v. LIRC*, 201 Wis. 2d 274, 284, 548 N.W.2d 57 (1996). We give a lesser amount of deference—due weight—when the agency has some experience in the area, but has not developed

ute,[9] and the circuit court's discussion of this statute suggests that it undertook a de novo review. Since OCU does not present any reason why we should defer to the board's interpretation of this federal statute, we will analyze the statute without deferring to the board's interpretation.

¶ 11. In construing statutes, our aim is to discern the intent of the legislative body. *Pritchard v. Madison Metro. Sch. Dist.*, 2001 WI App 62, ¶ 8, 242 Wis. 2d 301, 625 N.W.2d 613, *review denied*, 2001 WI 88, 246 Wis. 2d 166, 630 N.W.2d 220. To that end, we begin with the language of the statute, and, if that is plain, we apply

the expertise that necessarily places it in a better position than the court to make judgments regarding the interpretation of the statute. *Id.* at 286.

Under the great weight standard, we uphold an agency's reasonable interpretation of the statute if it is not contrary to the clear meaning of the statute, even if we conclude another interpretation is more reasonable. *Id.* at 287. Under the due weight standard, we uphold the agency's reasonable interpretation if it comports with the purpose of the statue and we conclude there is not a more reasonable interpretation. *Id.* We give no deference to the agency, and review the issue de novo when the issue before the agency is one of first impression or the agency's position has been so inconsistent as to provide no real guidance. *Id.* at 285.

[9] We have given due weight to a state agency's interpretation of a federal statute when the agency's responsibilities under state law include interpreting and applying the federal statute, but we have employed de novo review when that is not the case. *Gould v. DHSS*, 216 Wis. 2d 356, 372–75, 576 N.W.2d 292 (Ct. App. 1998); *American Family Mut. Ins. Co. v. DOR*, 214 Wis. 2d 577, 584 & n.6, 571 N.W.2d 710 (Ct. App. 1997), *overruled on other grounds*, 222 Wis. 2d 650, 586 N.W.2d 872 (1998).

the language to the facts at hand. *Id.* We conclude the plain language of 12 U.S.C. § 1771(a)(4) addresses the impact of conversion on a credit union's ownership of its assets and its responsibility for its obligations, but does not address whether a former federal credit union may continue to operate in one state when it has chosen to be chartered under the laws of another state. The subsection makes clear that converting from a federal credit union to a state credit union does not affect the assets that Heritage owns or the obligations for which it is responsible; but the subsection says nothing suggesting that Heritage may continue to operate in a state in which it chooses not to be chartered regardless of the laws or regulations of that state. We therefore agree with the circuit court and the board that OCU's denial of Heritage's applications is not in conflict with 12 U.S.C. § 1771(a)(4), and there is, therefore, no violation of the supremacy clause.

¶ 12. We next consider Heritage's argument that OCU lacks the authority under WIS. STAT. ch. 186 to regulate foreign state credit unions and the related argument that even if it has that authority, it does not have the authority to restrict whether or where those credit unions may operate branch offices in Wisconsin. Since administrative agencies have only those powers that are expressly granted to them by the legislature or are necessarily implied from the applicable statutes, *DOR v. Hogan*, 198 Wis. 2d 792, 816, 543 N.W.2d 825 (Ct. App. 1995), resolution of this issue presents questions of statutory construction.

¶ 13. The parties debate the standard of review we should employ on this issue. Relying on *Loomis v. Wisconsin Pers. Comm'n*, 179 Wis. 2d 25, 30, 505 N.W.2d 462 (Ct. App. 1993), Heritage argues we should employ a de novo standard of review because the issue concerns

the scope of OCU's powers and we review agency decisions de novo on the scope of its own powers. OCU counters that we should give great weight to the board's decision, and it discusses the requirements for this standard of review both in terms of itself and the board. However, OCU does not address Heritage's argument that we are concerned with the scope of OCU's powers and this determines the proper standard of review.

¶ 14. We are reviewing the board's decision, not that of OCU. *See* WIS. STAT. §§ 186.015(6)[10] and 227.52(4).[11] Since Heritage appears to be challenging the scope of OCU's authority, not the scope of the board's authority, we.are not persuaded that *Loomis* is applicable. On the other hand, from OCU's argument we cannot discern to what extent the board has expertise or a policy regarding OCU's authority to regulate foreign state credit unions in general, and their branch offices in particular, because the board's decision expresses uncertainty on this point and appears to defer to OCU's interpretation of its own statutory powers. We will therefore assume without deciding that de novo review is appropriate.[12]

---

[10] *See* note 6.

[11] WISCONSIN STAT. § 227.52 provides in part:

**Judicial review; decisions reviewable.** Administrative decisions which adversely affect the substantial interests of any person, whether by action or inaction, whether affirmative or negative in form, are subject to review as provided in this chapter, except as otherwise provided by law and except for the following:

. . . .

(4) Decisions of the office of credit unions.

[12] The question of the proper standard of review on the issue of OCU's authority is complicated. First, the statute

¶ 15. In support of its argument that the legislature did not intend that OCU regulate foreign state credit unions, Heritage first points to the definition of credit union in Wis. Stat. § 186.01(2):

> "Credit union" means a cooperative, nonprofit corporation, incorporated under this chapter to encourage thrift among its members, create a source of credit at a fair and reasonable cost and provide an opportunity for its members to improve their economic and social conditions. (Underline added.)

¶ 16. Heritage also points to Wis. Stat. § 186.02(1), which provides that "[s]even or more residents of this state" may organize a credit union by filing with OCU articles of incorporation and proposed bylaws that meet certain requirements. In addition, § 186.02(3) requires that OCU approve of the articles and bylaws in order for a credit union to be organized, and Wis. Stat. § 186.235(9) requires that OCU report to the Department of Justice any credit

governing the board's review under Wis. Stat. § 186.015(5) directs that it is to determine if the OCU acted within the scope of its authority, did not act arbitrarily or capriciously, and acted based on evidence in the record. The parties do not address how this statute affects our standard of review of the board's decision. Second, the board has a number of roles with respect to the OCU besides hearing credit union appeals under § 186.015(5): conferring with OCU on matters affecting credit unions and the office under § 186.015(1); responding to questions by the OCU, § 186.015(2)(c); and approving OCU's official actions, § 186.015(3). In this case, in denying Heritage's applications, OCU relied on the board's general policy guidelines encouraging reciprocity and decided how to apply it in this case to branch office applications. The parties do not distinguish between the board's authority to adopt a general policy encouraging reciprocity and OCU's authority to apply that policy to branch offices as it did in this case.

602

union that conducts its business in violation of ch. 186 and the Department of Justice may then bring an action to revoke the credit union's articles of incorporation.

¶ 17. We agree with Heritage that the above-cited provisions apply only to credit unions incorporated under WIS. STAT. ch. 186. However, WIS. STAT. § 186.235, which prescribes the duties and powers of OCU, provides:

> **(19)** SUPERVISION; REPORTS. All credit unions formed under this or other similar law, or authorized to transact in this state a business similar to that authorized to be done by this chapter, shall be under the control and supervision of the office of credit unions. Every such corporation shall make a full and detailed report of its business as of December 31 for that year, and of its condition on such date, in such form and containing such information as the office of credit unions may prescribe . . . .

Heritage acknowledges that this subsection "arguably refers to credit unions not incorporated in Wisconsin." But, Heritage asserts, even if it does, it does not expressly grant OCU the authority to determine whether or where foreign state credit unions may operate branch offices in Wisconsin, and no other provision does. Therefore, according to Heritage the legislature did not intend OCU to have that authority.

¶ 18. . We conclude WIS. STAT. § 186.235(19) plainly authorizes OCU to control and supervise credit unions incorporated under the laws of other states. That is the only reasonable interpretation of the phrase "or other similar law." When construing statutes we are to give them their common sense meaning to avoid unreasonable and absurd results. *City of Milwaukee v. Kilgore,*

185 Wis. 2d 499, 516, 517 N.W.2d 689 (Ct. App. 1994). The only reasonable interpretation of "other similar law" is the law of another state that, like WIS. STAT. ch. 186, authorizes the incorporation of credit unions. Giving "all credit unions" in this subsection the definition of WIS. STAT. § 186.01(2)—a credit union incorporated under ch. 186—produces a nonsensical result: If "all credit unions" in subsec. (19) are only credit unions incorporated under ch. 186, then the entire phrase "formed under this or other similar laws, or authorized to transact in this state a business similar to that authorized to be done by this chapter" is meaningless.

¶ 19. We also conclude OCU has the authority under WIS. STAT. § 186.235(19) to regulate whether and where a foreign state credit union may operate branch offices in Wisconsin. The authority given OCU in this subsection is not limited in any particular way, and we see no basis for reading in a limitation. The legislature need not expressly grant OCU the authority to determine whether and where a foreign state credit union may operate branch offices in this state because the authority it expressly gives OCU to "control and supervise" foreign state credit unions is broad and necessarily implies the authority to control and supervise their operation of branch offices in Wisconsin.

¶ 20. We disagree with Heritage's contention that WIS. STAT. § 186.41, which addresses interstate acquisition and mergers of credit unions, is an indication that the legislature intended to give OCU authority to regulate foreign state credit unions only as provided in that section. It does not logically follow from the

604

legislature expressly allowing "regional credit unions"[13] to acquire interests and merge with credit unions having their principal place of business in Wisconsin, under certain conditions and with OCU approval, that the legislature intended that foreign state credit unions could otherwise operate in Wisconsin free of OCU control and supervision. This proposed construction ignores the broad authority OCU has under WIS. STAT. § 186.235(19) to "control and supervis[e]" credit unions that are incorporated under the laws of other states.

¶ 21. Heritage next argues that, even if OCU has the statutory authority to regulate foreign state credit unions and to restrict their operation of branch offices in Wisconsin, OCU's decision to deny its applications is based on a policy that is a rule within the meaning of WIS. STAT. § 227.01(13),[14] and therefore it must be promulgated as required by WIS. STAT. § 227.10. In the absence of a validly promulgated rule, Heritage continues, there is nothing in WIS. STAT. ch. 186 to prevent it from operating branch offices anywhere in Wisconsin. In response, OCU asserts that Heritage did not challenge OCU's decision on this ground before the board or the circuit court and therefore we should not address

---

[13] A "regional credit union" is defined as "a state or federal credit union that has its principal office located in . . . Illinois, Indiana, Iowa, Kentucky, Michigan, Minnesota, Missouri, and Ohio." WIS. STAT. § 186.41(1)(c) and (d).

[14] WISCONSIN STAT. § 227.01(13) defines a "rule" as:

[A] regulation, standard, statement of policy or general order of general application which has the effect of law and which is issued by an agency to implement, interpret or make specific legislation enforced or administered by the agency or to govern the organization or procedure of the agency.

it.[15] Heritage replies that it has challenged OCU's legal authority for its decision from the outset, and the challenge based on a lack of rule-making is simply another argument relating to the broader issue of whether OCU acted outside its authority. Heritage also asserts that it was not until the circuit court's decision that "OCU's informal policy position" was determined to be the "authoritative basis in law" for the denial of Heritage's applications.

¶ 22. It is true, as Heritage contends, that we have the discretion to review issues not raised in the circuit court when only questions of law are presented, the parties have thoroughly briefed the issues, and there are no factual disputes. *See Wirth v. Ehly*, 93 Wis. 2d 433, 443–44, 287 N.W.2d 140 (1980) (*superseded* by Wis. Stat. § 895.52 *on other grounds, Wilson v. Waukesha County*, 157 Wis. 2d 790, 797, 460 N.W.2d 830 (Ct. App. 1990)). However, this case involves a challenge to the decision of an administrative agency on the ground that the decision is based on a policy that is a "rule" within the meaning of Wis. Stat. § 227.01(13). Therefore, we must consider the specific statutes that apply to such a challenge.

¶ 23. Wisconsin Stat. § 227.10(1) provides in part:

> Each agency shall promulgate as a rule each statement of general policy and each interpretation of a

---

[15] OCU also asserts that, even if we were to address this issue and decide OCU's decision is based on a policy that is invalid because it was not promulgated as a rule, the result would not be that Heritage could operate branch offices anywhere in Wisconsin; rather, the result would be that Heritage could *not* operate branch offices anywhere in Wisconsin. We need not address this argument.

statute which it specifically adopts to govern its enforcement or administration of that statute. . . .

WISCONSIN STAT. §§ 227.11–227.25 then specify the procedure for promulgating rules. WISCONSIN STAT. § 227.40(1) and (2) set forth the exclusive means of obtaining judicial review of the validity of a rule. Under § 227.40(2)(e), one of the ways is judicial review of an agency decision under WIS. STAT. §§ 227.52–227.58, the procedure Heritage has invoked for review of the board's decision. However, review of the validity of a rule is available under § 227.40(2)(e) only "if the validity of the rule involved was duly challenged in the proceeding before the agency in which the order or decision sought to be reviewed was made or entered."

¶ 24. We have considered whether Heritage's challenge is a challenge to "the validity of a rule" within the meaning of WIS. STAT. § 227.40 since no rule-making procedures of any kind has occurred. We conclude that it is. Section 227.40(4)(a) specifies the appropriate relief and provides:

> In any proceeding pursuant to this section for judicial review of a rule, the court shall declare the rule invalid if it finds that it violates constitutional provisions or exceeds the statutory authority of the agency or *was promulgated without compliance with statutory rule-making procedures*. (Emphasis added.)

Since "promulgat[ion] without compliance with statutory rule-making procedures" is one ground for declaring a rule invalid under § 227.40, § 227.40 logically encompass policies or other statements, standards, or orders that meet the definition of "rule" under WIS. STAT. § 227.01(13) but have not been promulgated as required by WIS. STAT. § 227.10.

607

¶ 25. We have also considered the argument that "promulgated without compliance with statutory rule-making procedures" means that promulgation as a rule has been undertaken but has been improper in some way. Under this interpretation of the phrase, it would not include a situation where no rule-making whatsoever had occurred. However, we conclude this interpretation is not viable in light of *County of Dane v. DHSS*, 79 Wis. 2d 323, 255 N.W.2d 539 (1977). In that case, the court held that the county had standing to challenge the validity of a rule that was not adopted in conformity with WIS. STAT. §§ 227.02, 227.023 and 227.025 (1973) (now numbered WIS. STAT. §§ 227.16, 227.20 and 227.21). *County of Dane*, 79 Wis. 2d at 331–32. The subject of that dispute was a DHSS program manual that had not been the subject of any rule-making. The court stated that WIS. STAT. § 227.05(2)(e) (1973) (now WIS. STAT. § 227.40(2)(e)) allowed the county's challenge. It noted that, "[a]lthough this issue was not raised in the proceedings before the agency, there was no indication at that time DHSS was relying on the program manuals ultimately cited by it in its order to the county." *County of Dane*, 79 Wis. 2d at 332–33. We read *County of Dane* to instruct that the requirement in § 227.40(2)(e) of first challenging the validity of a rule before the agency applies to an assertion that a policy that has not been the subject of any rule-making is invalid because it was not promulgated as a rule as required by WIS. STAT. § 227.10(1). *County of Dane* also instructs that failure to raise that assertion before the agency is not a bar to judicial review in circumstances when the challenger could not be expected to know the policy was the basis for the agency's decision.

608

¶ 26. We have carefully reviewed Heritage's appeal of OCU's decision to the board, its briefs to the examiner, and its objection to the examiner's proposed decision. We see no assertion by Heritage that OCU's decision was based on a policy that is a "rule" within the meaning of WIS. STAT. § 227.01(13) and therefore invalid because it was not promulgated as required by WIS. STAT. § 227.10(1). We cannot agree with Heritage that it was not until the circuit court's opinion that Heritage understood the basis for OCU's decision. OCU's denial letter to Heritage plainly stated that OCU had a "position" on reciprocity whereby it approved requests from foreign state credit unions as long as "the authority requested meets the criteria for powers established by statute for Wisconsin credit unions." The letter also explained how OCU was applying reciprocity to branch office requests. OCU elaborated on its reasons for applying reciprocity in this way in its brief to the board and to the circuit court, but the basis for its denial never changed. We see no reason why Heritage could not have asserted before the board that OCU's general policy on reciprocity, its particular application to branch office requests, or both, were invalid because not promulgated as required by § 227.10(1).

¶ 27. It is true that Heritage challenged OCU's decision on a variety of grounds that might loosely be characterized as "lacking legal authority"; and we agree that a challenge because the decision was based on a policy that should have been promulgated as a rule would come within that broad characterization. However, to accept this as a fulfillment of the requirement in WIS. STAT. § 227.40(2)(e) would, we conclude, be inconsistent with the purpose of the requirement. The purpose of the requirement is to provide an opportunity for the agency to address a challenge to the validity of a

rule before the challenger may seek judicial review of the challenge. That purpose is thwarted if any challenge to a decision that can be characterized as a "lack of legal authority" permits judicial review of a rule's invalidity on grounds not raised in the administrative proceedings.

■

¶ 28. We conclude that under WIS. STAT. § 227.40(2)(e), Heritage was required to present to the board its argument that OCU's decision was based on a policy that was invalid because it was not promulgated as required by WIS. STAT. § 227.10. Since Heritage did not, we conclude it may not obtain a judicial ruling on this issue.

¶ 29. Finally, Heritage challenges the board's decision that OCU's denial of its applications was reasonable.[16] Heritage contends that if the principle of reciprocity is the basis of OCU's decision, as OCU asserts, then OCU must permit Heritage to have branch offices anywhere in Wisconsin because Illinois statutes allow foreign state credit unions to conduct business anywhere in Illinois if the laws of the other state permit that.

¶ 30. We are to review the board's decision to determine whether the board acted within the range of discretion delegated to it by law and without violating

---

[16] Heritage presents this issue as a subset of its argument that OCU does not have the statutory authority to preclude it from operating branch offices wherever it chooses in Wisconsin. However, since we have already concluded that OCU does have the statutory authority to determine whether and where Heritage may operate branch offices in Wisconsin, the only remaining issue is whether OCU's decision was a reasonable exercise of its statutory authority. And, since we are reviewing the board's decision, not that of the OCU, we frame the issue accordingly.

any statute. WIS. STAT. § 227.57(8).[17] In doing so, we may not "substitute our judgment for that of the agency." *Id.* In addition, we must give "due weight ... [to] the experience, technical competence, and specialized knowledge of the [board], as well as the discretionary authority conferred upon it." Section 227.57(10).

¶ 31. Heritage does not point to any particular provision of WIS. STAT. ch. 186 or any other statutory provision that is inconsistent with the board's decision upholding OCU's decision to deny the applications, other than the arguments on OCU's statutory authority that we have already addressed. We therefore consider only whether the board's decision upholding OCU's denial of the applications was a reasonable exercise of the board's discretion.

¶ 32. The board correctly recognized that OCU was not obligated to allow foreign state credit unions to establish branch offices in Wisconsin. The board next considered the basis on which OCU had chosen to allow branch offices for foreign state credit unions—using the analogous geographic limitations WIS. STAT. § 186.113(1)

---

[17] WISCONSIN STAT. § 227.57(8) provides in full:

> The court shall reverse or remand the case to the agency if it finds that the agency's exercise of discretion is outside the range of discretion delegated to the agency by law; is inconsistent with an agency rule, an officially stated agency policy or a prior agency practice, if deviation therefrom is not explained to the satisfaction of the court by the agency; or is otherwise in violation of a constitutional or statutory provision; but the court shall not substitute its judgment for that of the agency on an issue of discretion.

Since Heritage does not assert that the board's decision is inconsistent with an agency rule, policy, practice, or constitutional provision, we consider only the two grounds referred to in the text above.

imposes for branch offices for Wisconsin credit unions. The board decided that using this as a basis for determining where to allow foreign state credit unions to operate branch offices in Wisconsin was reasonable because it applied the same limitation to foreign state credit unions that the legislature had imposed on Wisconsin credit unions. The board rejected Heritage's argument that reciprocity necessarily means granting it the rights that Illinois law grants to Wisconsin credit unions and decided that it was rational to view reciprocity as granting Heritage the rights with respect to branch offices that Wisconsin law gave Wisconsin credit unions.

■

¶ 33. We conclude the board's decision was reasonable and within the discretion granted it by law. While the reciprocity Heritage desires may also be a reasonable basis on which to grant foreign state credit unions the right to operate branch offices in Wisconsin, it does not follow that the board acted unreasonably in affirming a narrower principle of reciprocity. Accordingly, the circuit court correctly affirmed the board's decision.

*By the Court.*—Judgment affirmed.