*462 PATIENCE DRAKE ROGGENSACK, C.J.
¶ 114. (dissenting). Wisconsin Realtors Association, Wisconsin Builders Association, Wisconsin Towns Association, Jon E. Morehouse, Sr. and Ervin E. Selk (hereinafter Wisconsin Realtors) challenge the Public Service Commission's (the Commission) promulgation of Wis. Admin. Code ch. PSC 128 because the Commission did not follow the required rule-making procedure set out in Wis. Stat. § 227.115(2) (2009-10).[1] I conclude that the Commission was obligated, as a matter of law, to obtain a § 227.115(2) housing report because ch. PSC 128 directly affects housing. The Commission failed to obtain a § 227.115(2) housing report; therefore, ch. PSC 128 is invalid. Wis. Stat. § 227.40(4)(a). Accordingly, I respectfully dissent from the majority opinion.
I. BACKGROUND
¶ 115. This case reaches us on competing motions for summary judgment in regard to whether Wis. Admin. Code ch. PSC 128 was lawfully promulgated. Chapter PSC 128 regulates wind energy systems. In relation to housing, it establishes the following: maximum setbacks of wind turbines from dwellings; permissible wind turbine noise levels, as measured at nearby dwellings; the number of hours per year during which dwellings can be subjected to shadow flicker cast by wind turbines.
¶ 116. The legislature was concerned that wind turbines may affect both the health of Wisconsin citizens and housing. Wis. Stat. § 196.378(4g)(e); Wis. Stat. § 227.115(2). However, the legislature did not want each local unit of government imposing its own *463 regulations, which could unnecessarily impede the development of wind energy in Wisconsin. Accordingly, the legislature directed the Commission to promulgate rules that would reasonably protect people in their homes from health effects and reduced property values that could result from nearby wind turbines, while at the same time creating a uniform system of regulations for wind energy systems throughout the state. § 196.378(4g)(b).
¶ 117. In promulgating Wis. Admin. Code ch. PSC 128, the Commission was required to obtain a comprehensive housing report from the Department of Commerce[2] if its proposed rule "directly or substantially affects the development, construction, cost, or availability of housing in this state." Wis. Stat. § 227.115(2). The required housing report was to be prepared "before [the proposed rule] is submitted to the legislative council staff under s. 227.15." Id.
¶ 118. The record and arguments of the parties reveal that the Commission never requested or obtained the required housing report from the Department. Apparently, the Commission never considered its obligations under Wis. Stat. § 227.115(2) because § 227.115 is not listed in the Commission's "Plain Language Analysis" that it submitted to the Legislature and in which the Commission mentioned other statutes.
*464 II. DISCUSSION
¶ 119. The majority opinion employs three methods by which it permits the Commission to ignore the command of the legislature. First, it misunderstands Wisconsin Realtors' argument, and therefore, never addresses it. Second, without deciding what Wis. Stat. § 227.115(2) means, the majority opinion chooses not to apply § 227.115(2) to Wis. Admin. Code ch. PSC 128.[3] In so doing, it ignores the policy choice of the legislature, which requires a housing report if a Commission rule directly or substantially affects housing. Third, the majority opinion employs Wis. Stat. § 227.20(3) to create a presumption that the Commission followed all applicable rule-making procedures based on the Commission's filing of a certified copy of ch. PSC 128 with the Legislative Reference Bureau.[4]
A. Standard of Review
¶ 120. We review summary judgment granted to the Commission by the circuit court and affirmed by the court of appeals. We review independently, as a matter of law, whether summary judgment was properly granted. Grygiel v. Monches Fish & Game Club, Inc., 2010 WI 93, ¶ 12, 328 Wis. 2d 436, 787 N.W.2d 6. Our review centers on interpretation and application of statutes. Statutory interpretation and application present questions of law for our independent review; however, we benefit from the reasoning of other courts' decisions. Richards v. Badger Mut. Ins. Co., 2008 WI 52, | 14, 309 Wis. 2d 541, 749 N.W.2d 581. This controversy also involves the interpretation and appli *465 cation of administrative rules. These too present questions of law for our independent review. Brown v. Brown, 177 Wis. 2d 512, 516, 503 N.W.2d 280 (Ct. App. 1993).
B. Rule Promulgation
1. "Directly affects"
¶ 121. All parties agree that if Wis. Admin. Code ch. PSC 128 directly affects housing, the Commission was required to obtain a housing report from the Department before it filed the rule with the Legislative Reference Bureau. The parties' dispute centers on the meaning of "directly affects" in Wis. Stat. § 227.115(2). This issue is clouded in the majority opinion because it never bothers to interpret § 227.115(2) and tell the reader what "directly affects" means. It is also clouded by the majority opinion's repeated mischaracterization of Wisconsin Realtors' argument.[5]
¶ 122. Determination of the meaning of "directly affects" is informed by the meaning of Wis. Stat. § 196.378(4g)(b) because § 196.378(4g)(b) is the enabling legislation for Wis. Admin. Code ch. PSC 128. Therefore, the Commission was required to follow the legislative directives of § 196.378(4g)(b) when it promulgated ch. PSC 128. Wis. Hosp. Ass'n v. Natural Res. Bd., 156 Wis. 2d 688, 706, 457 N.W.2d 879 (Ct. App. 1990) (explaining that on review "court[s] should iden *466 tify the elements of the enabling statute and match the rule against those elements"). The meaning of Wis. Stat. § 227.115(2) also informs the controversy before us because of the proximity of wind turbines to housing.
¶ 123. I interpret Wis. Stat. § 196.378(4g)(b) and Wis. Stat. § 227.115(2) to ascertain their meaning. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶ 43, 271 Wis. 2d 633, 681 N.W.2d 110. Scope, context and purpose are relevant to a plain meaning analysis. Id., ¶ 48. I also note that "[a]n administrative agency has only those powers which are expressly conferred or can be fairly implied from the statutes under which it operates." Oneida Cnty. v. Converse, 180 Wis. 2d 120, 125, 508 N.W.2d 416 (1993).
¶ 124. Wisconsin Stat. § 227.115(2) addresses rules that affect housing such that, together with Wis. Stat. § 196.378(4g)(b), they establish requirements for the Commission's promulgation of Wis. Admin. Code ch. PSC 128. Furthermore, because these statutes bear on the same subject matter, here, the promulgation of administrative rules that regulate wind turbines, they are construed in that context so that they are consistent with one another. McDonough v. DWD, 227 Wis. 2d 271, 279, 595 N.W.2d 686 (1999). Accordingly, the Commission was required to have exercised its rule-making authority within the framework established by these statutes.
¶ 125. I begin with the words chosen by the legislature in its enabling legislation. Wisconsin Stat. § 196.378(4g)(b) provides in relevant part:
The commission shall. . . promulgate rules that specify the restrictions a political subdivision may impose on the installation or use of a wind energy *467 system consistent with the conditions specified in s. 66.0401(lm)(a) to (c). The subject matter of these rules shall include setback requirements that provide reasonable protection from any health effects, including health effects from noise and shadow flicker, associated with wind energy systems. The subject matter of these rules ... may include . .. set-back distances, maximum audible sound levels, shadow flicker, proper means of measuring noise, interference with radio, telephone, or television signals, or other matters. A political subdivision may not place a restriction on the installation or use of a wind energy system that is more restrictive than these rules.
¶ 126. The legislative grant of authority to the Commission in Wis. Stat. § 196.378(4g)(b) described the legislature's purpose and topics that the Commission was required to address when promulgating Wis. Admin. Code ch. PSC 128. Section 196.378(4g)(b) plainly states that the rules enacted "shall include setback requirements that provide reasonable protection from any health effects, including health effects from noise and shadow flicker." Section 196.378(4g)(b) also granted the Commission discretionary authority in other areas.
¶ 127. There are good reasons for the legislature's mandate that the Commission enact setback requirements for wind turbines. It is well known that wind turbines may be harmful to the health of those who live close to them and are sensitive to the noise and shadow flicker they produce. See Roy D. Jeffery, et al., Adverse Health Effects of Industrial Wind Turbines, 59 Canadian Family Physician 473 (2013); Jerry Punch & Richard James, Negative Health Effects of Noise from Industrial Wind Turbines: Some Background, http://www.hearinghealthmatters.org/ *468 hearingviews/2014/wind-turbine-health-problemsnoise (last visited March. 26, 2015).
¶ 128. Directly connected to legislatively focused health concerns, Wis. Admin. Code § PSC 128.13 establishes siting criteria for wind turbines in regard to setback distance and height requirements; Wis. Admin. Code § PSC 128.14 addresses noise criteria;[6] Wis. Admin. Code § PSC 128.15 addresses shadow flicker.[7] Accordingly, the Commission's application of Wis. Stat. § 196.378(4g)(b) is driven by wind turbines' effects on the health of people who live or work in proximity to wind turbines.
¶ 129. Wisconsin Admin. Code § PSC 128.13(l)(a) provides for permissible setbacks, depending on the type of building that is nearby. The largest setback is 1,250 feet. The setback from wind turbines generally is measured as the distance from the wind turbine tower to the nearest point on the foundation of a residence or occupied community building. § PSC 128.13(l)(b).
¶ 130. The setbacks of Wis. Admin. Code § PSC 128.13 lessen the noise and shadow flicker impacts of wind turbines on residents and real estate that are as far away from the wind turbines as § PSC 128.13(l)(a) *469 provides. Stated otherwise, without consideration of the setbacks of § PSC 128.13, wind turbines could be placed in the middle of residential communities with houses only a few feet away so long as no local ordinance regulated placement.
¶ 131. Because Wis. Admin. Code ch. PSC 128 prevents placement of wind turbines that are inconsistent with its provisions, ch. PSC 128 lessens the effects of wind turbines on the health of people who reside nearby. Chapter PSC 128 does so by subjecting the housing in which people live to less noise and less shadow flicker. Stated otherwise, §§ PSC 128.13, 128.14 and 128.15 directly affect the levels of noise and shadow flicker that wind turbines inflict on nearby housing.
¶ 132. The effect of wind turbines on the health of people living nearby was considered by the Wind Siting Council when ch. PSC 128 was enacted. Furthermore, Wis. Stat. § 196.378(4g)(e) requires periodic review of wind turbines' effects on health.[8] Because wind turbines have the potential to affect the health of those who live nearby, wind turbines also will affect the market for those properties because some buyers will reject the properties because they believe that wind turbines will have a negative effect on their health. See, e.g., Nina Pierpont, Wind Turbine Syndrome: A Report on a Natural Experiment (2009) (available at http://www.windturbinesyndrome.com).
*470 ¶ 133. The legislature recognized that health effects associated with wind turbines may be connected to the distance between wind turbines and housing when it required that setbacks provide "reasonable protection from any health effects." Wis. Stat. § 196.378(4g)(b). As health effects caused by wind turbines also affect the real estate market, the legislature required the Commission to obtain a housing report while it was in the process of promulgating Wis. Admin. Code ch. PSC 128. Wisconsin Stat. § 227.115 specified the findings that the Department was required to make in assessing a proposed rule's effect on housing. Section 227.115(3) provides:
(a) The report of the department shall contain information about the effect of the proposed rule on housing in this state, including information on the effect of the proposed rule on all of the following:
1. The policies, strategies and recommendations of the state housing strategy plan.
2. The cost of constructing, rehabilitating, improving or maintaining single family or multifamily dwellings.
3. The purchase price of housing.
4. The cost and availability of financing to purchase or develop housing.
5. Housing costs, as defined in s. 560.9801(3)(a) and (b).
(b) The report shall analyze the relative impact of the effects of the proposed rule on low- and moderate-income households.
¶ 134. The legislature required the Commission to request a housing report from the Department if a "proposed rule directly or substantially affects the *471 development, construction, cost, or availability of housing" in Wisconsin. Wis. Stat. § 227.115(2). Section 227.115(2) requires the Commission to do so before the proposed rule is forwarded to the legislative council staff under Wis. Stat. § 227.15.
¶ 135. Wisconsin Stat. § 227.115(2)'s phrase, "directly or substantially affects," is not defined in § 227.115, nor has it been interpreted in prior cases. However, the phrase "directly affects" has been interpreted in other contexts. For example, Sausen v. Town of Black Creek Bd. of Review, 2014 WI 9, ¶ 3, 352 Wis. 2d 576, 843 N.W.2d 39, concludes that an assessor's classification of property "directly affects" the property's assessment because of the classification's relationship to statutory percentages of assessment. State v. Long, 2009 WI 36, ¶ 51, 317 Wis. 2d 92, 765 N.W.2d 557, explains that proof of a prior conviction "directly affects" a liberty interest because such proof is relevant to the term of incarceration to which a defendant may be subjected. City of Appleton v. Town of Menasha, 142 Wis. 2d 870, 879, 419 N.W.2d 249 (1988), concludes that any illegal expenditure of public funds "directly affects" taxpayers because taxpayers suffer a pecuniary loss as a result.
¶ 136. In each decision, "directly affects" has been defined by a nexus between an act and the interest of a person that is influenced by the act. Accordingly, I conclude that the plain meaning of "directly affects" in Wis. Stat. § 227.115(2) includes an act that has a nexus to housing. That is, in order for a proposed rule to "directly affect" housing, there must be a nexus between the proposed rule and housing.
¶ 137. As I have explained, Wis. Admin. Code ch. PSC 128 has a nexus to housing due to the setbacks of *472 § PSC 128.13, the decibel noise levels of § PSC 128.14 and the minimization of shadow flicker in § PSC 128.15, all of which regulate wind turbines' effects on nearby housing. Stated otherwise, the plain meaning of "directly affects" in Wis. Stat. § 227.115(2) includes those proposed rules that regulate wind turbine setbacks, noise levels and shadow flicker.
¶ 138. These obvious nexuses are the core of Wisconsin Realtors' contention from which it concluded that a housing report was required by Wis. Stat. § 227.115(2).[9] Stated otherwise, it is the position of Wisconsin Realtors that § 227.115(2) does not require that a rule have a negative effect on housing before a housing report is required by § 227.115(2).[10] Rather, the legislative threshold for requiring a housing report under § 227.115(2) is triggered whenever housing is "directly affected" by the terms of a proposed rule. I agree with Wisconsin Realtors. The statute says nothing about obtaining a housing report only when a rule negatively or inadequately affects housing.
¶ 139. Furthermore, Wis. Stat. § 196.378(4g)(b) and Wis. Stat. § 227.115(2) must be read together because they bear on the same subject matter, proposed administrative rules. McDonough, 227 Wis. 2d *473 at 279. When we do so, the nexus between the health effects of wind turbines and housing becomes apparent.
¶ 140. Wisconsin Admin. Code §§ PSC 128.13, 128.14 and 128.15 directly affect noise levels and shadow flicker to which housing is subjected by the operation of wind turbines. It follows then as a matter of course that the effect of wind turbines on housing is central to carrying out the plain meaning of § 196.378(4g)(b), which required the Commission to draft rules that addressed wind turbines' effects on health. Stated otherwise, housing is central to the Commission's compliance with § 196.378(4g)(b) because it is due to living in nearby housing that the health of Wisconsin residents is most affected by wind turbines. Therefore, if the Commission's rules did not directly affect housing, those rules would have a limited impact on health, contrary to the enabling legislation for ch. PSC 128.
¶ 141. Both the court of appeals and the majority opinion misunderstand Wisconsin Realtors' argument. For example, the court of appeals said,
To demonstrate that a housing impact report was required, [Wisconsin Realtors] must show that the setback, noise, and shadow flicker restrictions imposed by PSC 128 are so inadequate that the rules will directly or substantially affect the development, construction, cost, or availability of housing in Wisconsin.
Wis. Realtors Ass'n v. Pub. Serv. Comm'n of Wis., No. 2013AP1407, unpublished slip op., ¶ 18 (Wis. Ct. App. March 25, 2014).
¶ 142. However, no showing of inadequacy is required of Wisconsin Realtors under Wis. Stat. § 227.115(2) in order to demonstrate that Wis. Admin. *474 Code ch. PSC 128 directly affects housing. The plain meaning of the words that the legislature chose for Wis. Stat. § 227.115(2) does not require that the rules the Commission proposed be "inadequate" in order for those rules to directly affect housing. All that is required is a nexus between the proposed rules and their effect on housing. It is beyond dispute that ch. PSC 128 has such a nexus.
¶ 143. Once that threshold is met, a housing report is required. It is the task of the Department, as it prepares the housing report, to assess whether the administrative rules were adequate or inadequate to protect housing. The Department's assessment and report was to be done during the rule-making process. Stated otherwise, the legislature gave the Department the task of assessing whether proposed rules are adequate to protect the housing of people who reside near wind turbines.[11] The legislature did not give that task to persons whose health and property values are impacted by the proposed rule. That was a burden for government to shoulder, which the court of appeals[12] and the majority opinion[13] have mistakenly placed on those Wisconsin residents who live near wind turbines.
*475 2. Presumption
¶ 144. The majority opinion also concludes that if all else fails, Wis. Admin. Code ch. PSC 128 is saved by the presumption of Wis. Stat. § 227.20(3), which provides in relevant part:
(3) Filing a certified copy of a rule with the legislative reference bureau creates a presumption of all of the following:
(c) That all of the rule-making procedures required by this chapter were complied with.
¶ 145. I take judicial notice that a certified copy of Wis. Admin. Code ch. PSC 128 was filed with the Legislative Reference Bureau. However, because §§ PSC 128.13, 128.14 and 128.15 directly affect housing, a Wis. Stat. § 227.115(2) housing report was required. All agree that the Commission did not request the Department'to prepare a housing report, and the Department provided no such report. Because the Commission was required to request a housing report and did not do so, the presumption of Wis. Stat. § 227.20(3)(c) has been rebutted.
¶ 146. Furthermore, if governmental agencies could ignore legislative directives simply by filing a certified copy of a proposed rule with the Legislative Reference Bureau, there would be a great temptation for busy agency employees not to bother with fully complying with legislative directives during rule-making. Accordingly, the presumption of Wis. Stat. § 227.20(3)(c) cannot save the Commission's rules that were enacted with disregard for the express directives of the Legislature. See Dane Cnty. v. DHSS, 79 Wis. 2d *476 323, 331-32, 255 N.W.2d 539 (1977) (concluding that Dane County could challenge the manner in which the Department of Health and Social Services had promulgated its rule).
C. Remedy
¶ 147. I have concluded that the plain meaning of Wis. Stat. § 227.115(2) required the Commission, as a matter of law, to obtain a housing report from the Department when it promulgated Wis. Admin. Code ch. PSC 128; that it failed to do so and that its failure is not saved by Wis. Stat. § 227.20(3)(c). The question now becomes, what is the remedy for the Commission's failure.
¶ 148. Wisconsin Realtors began this declaratory judgment action pursuant to Wis. Stat. § 227.40. Therefore, I look to that section's provisions for guidance. Wisconsin Stat. § 227.40(4)(a) states:
In any proceeding pursuant to this section for judicial review of a rule, the court shall declare the rule invalid if it finds that it violates constitutional provisions or exceeds the statutory authority of the agency or was promulgated without compliance with statutory rule-making procedures.
It is under the last provision: the rule "was promulgated without compliance with statutory rule-making procedures," on which Wisconsin Realtors' claim lies.
¶ 149. Courts have reviewed other rules that have been promulgated without compliance with rule-making procedures and have held such rules invalid. For example, in Cholvin v. DHFS, 2008 WI App 127, ¶¶ 32-34, 313 Wis. 2d 749, 758 N.W.2d 118, the court of appeals held a directive that the Department of *477 Health and Family Services had given to Susan Cholvin was invalid because the Department did not employ statutorily required rule-making to promulgate the directive. See also Heritage Credit Union v. Office of Credit Unions, 2001 WI App 213, ¶ 24, 247 Wis. 2d 589, 634 N.W.2d 593 (explaining that failure to comply with rule-making procedures is one ground for declaring a rule invalid).
| 150. The Commission did not comply with Wis. Stat. § 227.115(2), and as a matter of law, it was required to do so. The plain meaning of Wis. Stat. § 227.40(4)(a) provides the remedy: "the court shall declare the rule invalid." Accordingly, I follow that directive and conclude that ch. PSC 128 is invalid.
III. CONCLUSION
¶ 151. I conclude that the Commission was obligated, as a matter of law, to obtain a Wis. Stat. § 227.115(2) housing report because Wis. Admin. Code ch. PSC 128 directly affects housing. The Commission failed to obtain a § 227.115(2) housing report; therefore, ch. PSC 128 is invalid. Wis. Stat. § 227.40(4)(a). Accordingly, I respectfully dissent from the majority opinion.
| 152. I am authorized to state that Justice ANNETTE KINGSLAND ZIEGLER joins this dissent.

 All subsequent references to the Wisconsin Statutes are to the 2009-10 version unless otherwise indicated.

 At the time Wis. Admin. Code ch. PSC 128 was created, the Department of Commerce was to have prepared the housing report. Wis. Stat. § 227.115(l)(a). The current version of § 227.115(l)(a) (2013-14) requires that the report be prepared by the Department of Administration.

 Majority op., ¶ 7.

M, ¶¶ 66-67.

 For example, the majority asserts, that Wisconsin Realtors "contends that a housing impact report is required under Wis. Stat. § 227.115(2) whenever a proposed rule relates to housing." Majority op., ¶ 69. That is not an accurate representation of Wisconsin Realtors' contention. Rather, Wisconsin Realtors contends that a housing report is required when a Commission's rule directly or substantially affects housing.

 Wisconsin Admin. Code § PSC 128.14 provides in relevant part: " [A] n owner shall operate the wind energy system so that the noise attributable to the wind energy system does not exceed 50 dBA during daytime hours and 45 dBA during nighttime hours." § PSC 128.14(3)(a). The determination of noise level is made at "the outside wall nearest to the closest wind turbine." § PSC 128.14(4).

 Wisconsin Admin. Code § PSC 128.15(l)(b) and (2) provides in relevant part: "An owner shall design the proposed wind energy system to minimize shadow flicker at a residence or occupied community building ... [so it] does not cause more than 30 hours per year of shadow flicker."

 The Wind Siting Council is required to "survey the peer-reviewed scientific research regarding the health impacts of wind energy systems." Wis. Stat. § 196.378(4g)(e); see Wisconsin Wind Siting Council, Wind Turbine Siting-Health Review and Wind Siting Policy Update, 3-4, 14 (2014). The Wind Siting Council addressed health concerns, not housing concerns.

 The majority opinion repeatedly misstates Wisconsin Realtors' position. See majority op., e.g., ¶¶ 69-76. In so doing, the majority opinion sets up straw men that it can knock down. However, more importantly, this device permits the majority opinion to escape addressing Wisconsin Realtors' actual argument about why Wis. Admin. Code ch. PSC 128 directly affects housing.

 If there was ever any doubt, Wisconsin Realtors' position in this regard was clearly stated at oral argument under questioning by the court.

 See supra note 2.

 That the court of appeals added words to Wis. Stat. § 227.115(2) and thereby constructed a standard contrary to what the legislature mandated is confirmed by the court's conclusion that "[w]ithout presenting evidence that the restrictions imposed by PSC 128 are insufficient, [Wisconsin Realtors] cannot rebut the presumption that no housing impact report was required." Wis. Realtors Ass'n v. Pub. Serv. Comm'n of Wis., No. 2013AP1407, unpublished slip op., ¶ 18 (Wis. Ct. App. March 25, 2014).

 See majority op., ¶ 7.