# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2013AP1407 |
| COMPLETE TITLE: | Wisconsin Realtors Association, Wisconsin Builders Association, Wisconsin Towns Association, John E. Morehouse, Sr. and Ervin E. Selk, Plaintiffs-Appellants-Petitioners, v. Public Service Commission of Wisconsin, Defendant-Respondent. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
(Reported at 353 Wis. 2d 554, 846 N.W. 2d 34)
(Ct. App. 2014 - Unpublished)

| | |
|---|---|
| OPINION FILED: | June 30, 2015 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | February 5, 2015 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Brown |
| JUDGE: | William M. Atkinson |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | ROGGENSACK, C.J., ZIEGLER, J. dissent. (Opinion Filed.) |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the plaintiffs-appellants-petitioners, there were briefs by *John A. Kassner* and *von Briesen & Roper, S.C.,* Madison and oral argument by *John Kassner*.

For the defendant-respondent, there was a brief by *Cynthia E. Smith*, *Justin W. Chasco*, and *Public Service Commission of Wisconsin*, and oral argument by *Cynthia E. Smith*.

**NOTICE**

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2013AP1407
(L.C. No. 2012CV1203)

STATE OF WISCONSIN : IN SUPREME COURT

Wisconsin Realtors Association, Wisconsin Builders Association, Wisconsin Towns Association, John E. Morehouse, Sr. and Ervin E. Selk,

Plaintiffs-Appellants-Petitioners,

v.

Public Service Commission of Wisconsin,

Defendant-Respondent.

**FILED**

**JUN 30, 2015**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed*.

¶1 SHIRLEY S. ABRAHAMSON, J. This is a review of an unpublished decision of the court of appeals affirming a summary judgment of the Circuit Court for Brown County, William M. Atkinson, Judge, in favor of the defendant (the Public Service Commission of Wisconsin) and against the plaintiffs (the Wisconsin Realtors Association, the Wisconsin Builders Association, the Wisconsin Towns Association, John E. Morehouse,

Sr., and Ervin E. Selk).[1]  We refer to the plaintiffs collectively as the Wisconsin Realtors Association, or WRA.

¶2  The issue presented is whether Wis. Admin. Code ch. PSC 128,[2] titled "Wind Energy Systems" and sometimes referred to herein as "the wind energy rules" or "the rules," is invalid because it was promulgated by the Public Service Commission "without compliance with statutory rule-making procedures."[3]

¶3  WRA asserts that in promulgating the wind energy rules, the Public Service Commission failed to comply with the procedural requirement set forth at Wis. Stat. § 227.115(2). Under Wis. Stat. § 227.115(2), if any rule proposed by an agency (including the Public Service Commission) "directly or substantially affects the development, construction, cost, or availability of housing in this state," then the Department of Commerce shall prepare a report, referred to by the parties and herein as a "housing impact report," before that rule is

---

[1] Wis. Realtors Ass'n v. Pub. Serv. Comm'n, No. 2013AP1407, unpublished slip op. (Wis. Ct. App. Mar. 25, 2014).

[2] Wisconsin Admin. Code Ch. PSC 128 has not changed since it went into effect.  All references to ch. PSC 128 are therefore to the current December 2012 version.

[3] See Wis. Stat. § 227.40(4)(a) (2009-10) (providing that the court shall declare an administrative rule invalid if it finds that (1) the rule violates constitutional provisions; (2) the rule exceeds the statutory authority of the agency; or (3) the rule was promulgated without compliance with statutory rule-making procedures).

All subsequent references to the Wisconsin Statutes are to the 2009-10 version unless otherwise indicated.

submitted to the Legislative Council staff.[4] WRA asserts that a housing impact report was required for Wis. Admin. Code ch. PSC 128 as a matter of law.

¶4 Thus, the more specific issue presented is whether under Wis. Stat. § 227.115(2), the Department of Commerce was required as a matter of law to prepare a housing impact report before Wis. Admin. Code ch. PSC 128 was submitted to the Legislative Council staff for review. To decide this issue, the court must determine based only on the texts of the governing statutes and the wind energy rules themselves whether the rules directly or substantially affect the development, construction, cost, or availability of housing in this state.

¶5 The circuit court granted summary judgment to the Public Service Commission on its motion, concluding that Wis. Admin. Code ch. PSC 128 does not directly or substantially affect the development, construction, cost, or availability of housing in this state and thus that a housing impact report was not required.

¶6 The court of appeals affirmed, stating: "We must presume PSC 128 was duly promulgated, and [WRA] has not cited any evidence to rebut that presumption."[5]

---

[4] The version of Wis. Stat. § 227.115(2) applicable in the instant case assigned the responsibility for preparing housing impact reports to the Department of Commerce. Responsibility for preparing housing impact reports is now in the Department of Administration. See Wis. Stat. § 227.115(1)(a) (2011-12) (defining "[d]epartment" as "the department of administration").

¶7   We conclude that WRA has not demonstrated that a housing impact report was required as a matter of law for Wis. Admin. Code ch. PSC 128.  The texts of the governing statutes and the wind energy rules do not demonstrate as a matter of law that the rules directly or substantially affect the development, construction, cost, or availability of housing in this state.

¶8   We further conclude that invalidating Wis. Admin. Code ch. PSC 128 under the circumstances presented in the instant case would infringe on the role of the legislature, which we decline to do.

¶9   Accordingly, WRA's challenge to Wis. Admin. Code ch. PSC 128 fails.

¶10  Our analysis will proceed as follows.  First, we set forth the relevant facts and procedural history.  We then recite the applicable standard of review.  Next, we examine the statutory framework underlying this dispute.  Finally, we determine that WRA has not demonstrated that a housing impact report was required as a matter of law for Wis. Admin. Code ch. PSC 128.

I

¶11  The relevant facts are not in dispute.

---

[5] Wis. Realtors Ass'n v. Pub. Serv. Comm'n, No. 2013AP1407, unpublished slip op., ¶23 (Wis. Ct. App. Mar. 25, 2014).

¶12 The Public Service Commission is an independent regulatory agency with "jurisdiction to supervise and regulate every public utility in this state . . . ."[6]

¶13 On September 30, 2009, the legislature enacted Wis. Stat. § 196.378(4g)(b), which provides that "the [Public Service Commission] shall, with the advice of the wind siting council, promulgate rules that specify the restrictions a political subdivision may impose on the installation or use of a wind energy system . . . ."[7]

¶14 The statute further provides that the rules to be promulgated by the Public Service Commission shall include setback requirements for wind turbines and may include requirements for other aspects of wind energy systems, such as their visual appearance, lighting, and electrical connections to the power grid; the shadow flicker they produce; the noise they produce and the proper means of measuring that noise; and their interference with radio, telephone, or television signals. The statute also states that the setbacks established by the Public Service Commission shall "provide reasonable protection from any health effects . . . ."[8]

¶15 Wisconsin Stat. § 196.378(4g)(b) provides in full as follows:

---

[6] Wis. Stat. § 196.02(1)

[7] See 2009 Wis. Act 40, § 12.

[8] Wis. Stat. § 196.378(4g)(b).

The commission shall, with the advice of the wind siting council, promulgate rules that specify the restrictions a political subdivision may impose on the installation or use of a wind energy system consistent with the conditions specified in s. 66.0401(1m)(a) to (c).  The subject matter of these rules shall include setback requirements that provide reasonable protection from any health effects, including health effects from noise and shadow flicker, associated with wind energy systems.  The subject matter of these rules shall also include decommissioning and may include visual appearance, lighting, electrical connections to the power grid, setback distances, maximum audible sound levels, shadow flicker, proper means of measuring noise, interference with radio, telephone, or television signals, or other matters.  A political subdivision may not place a restriction on the installation or use of a wind energy system that is more restrictive than these rules.[9]

¶16  The enactment of Wis. Stat. § 196.378(4g)(b) began a three-year process that culminated in the promulgation of Wis. Admin. Code ch. PSC 128.

¶17  Shortly after Wis. Stat. § 196.378(4g)(b) was enacted, the Public Service Commission appointed the members of the Wind Siting Council.  The Wind Siting Council was created by the legislature to provide research and advice to the Public Service Commission on the regulation of wind energy systems.[10]

---

[9] See also Wis. Stat. § 66.0401(1m) ("No political subdivision may place any restriction . . . on the installation or use of a wind energy system that is more restrictive than the rules promulgated by the [Public Service Commission] under s. 196.378(4g)(b).").

[10] Wis. Stat. § 15.797(1)(b) ("There is created in the public service commission a wind siting council that consists of . . . members appointed by the public service commission for 3-year terms . . . .").

¶18 Between March 29, 2010, and August 4, 2010, the Wind Siting Council met 20 times to discuss the restrictions a political subdivision should be permitted to impose on wind energy systems. At three of these meetings, the Wind Siting Council spent all or a substantial portion of its time considering the impact of wind energy systems on property values.

¶19 The Wind Siting Council ultimately concluded that there is no causal relationship between the siting of wind turbines and a measurable change in property values. The Wind Siting Council set forth this conclusion (along with various other findings and recommendations) in its final recommendations to the Public Service Commission dated August 9, 2010.

¶20 In developing the wind energy rules, the Public Service Commission considered the Wind Siting Council's findings and recommendations in conjunction with information gathered from various other sources, including:

- Wind-siting regulations and guidelines from a variety of states, including those immediately adjacent to Wisconsin;

- A wide variety of local ordinances and community agreements from throughout the state;

- Various white papers and best practices;

- Papers from a conference on wind-siting effects;

- Commission experience and precedent in wind-siting decisions;

- Environmental impact statements prepared for wind energy projects in Wisconsin;

7

- Technical and scientific research and writing on wind siting;

- Presentations and lectures given on wind-siting issues;

- Research by non-profit organizations and educational institutions on wind siting;

- Expert testimony on wind-siting issues;

- Other states' investigations and precedent on wind siting;

- Advice from consulting professionals with public health experience in Wisconsin;

- Court cases on wind-siting issues;

- Joint development agreements between wind energy developers and political subdivisions;

- Lease agreements for wind energy developments;

- Complaint resolution documentation from past complaints about wind energy projects;

- The Public Service Commission's noise measurement protocols, stray voltage protocols, and application filing requirements;

- Federal regulations and Federal Aviation Administration processes, standards, and provisions;

- Other state agencies' processes regarding political subdivision decision-making; and

- Research, writing, and presentations by the federal government and national energy labs on wind-siting issues.

¶21 On May 17, 2010, the Public Service Commission submitted the first draft of its proposed wind energy rules to

the Legislative Council staff.[11]  On June 14, 2010, after reviewing the Public Service Commission's proposal, the Legislative Council submitted a report to the Public Service Commission suggesting specific changes to the rules.  The Public Service Commission incorporated many of the Legislative Council's suggestions.

¶22  The Public Service Commission then held three public hearings around the state on its proposed wind energy rules: one in Fond du Lac on June 28, 2010; one in Tomah on June 29, 2010; and one in Madison on June 30, 2010.  Written comments from the public were accepted until noon on July 7, 2010.

¶23  On August 31, 2010, pursuant to Wis. Stat. § 227.19, which provides for legislative review of proposed rules, the Public Service Commission submitted its proposed wind energy rules to the legislature.

¶24  The proposed rules were accompanied by a report to the legislature, as required by Wis. Stat. § 227.19(2).[12]

---

[11] See Wis. Stat. § 227.15 ("Prior to a public hearing on a proposed rule . . . an agency shall submit the proposed rule to the legislative council staff for review.").  See also Wis. Stat. § 13.91 (creating a nonpartisan bureau entitled "Legislative Council Staff" and setting forth its duty to review proposed administrative rules).

[12] Wisconsin Stat. § 227.19(2) provides that "[a]n agency shall submit a notice to the chief clerk of each house of the legislature when a proposed rule is in final draft form.  The notice shall be submitted in triplicate and shall be accompanied by a report in the form specified under sub. (3). . . ."

(continued)

9

¶25 The Public Service Commission did not submit a housing impact report.  The Public Service Commission's report to the legislature did, however, comment on the likely effect of the proposed rules on property values.[13]  The report states as follows:

> Comments submitted by members of the public and government officials [c]ite studies, report individual experiences, and express fears that large wind energy systems have a negative impact on property values. . . . The property value impacts described included not being able to get a real estate company to list a property, a greatly reduced number of interested buyers, an increased length of time required to sell a property, and offers well below the appraised value of the property. . . . <u>Existing property value studies contain insufficient data to quantify property value impacts to properties one-half mile and closer to turbines</u> (emphasis added).

---

Subsection (3)(g) lists numerous matters to be included in the report an agency submits to the legislature with a proposed rule, including "[t]he report of the department of commerce, as required by s. 227.115, if a proposed rule directly or substantially affects the development, construction, cost, or availability of housing in this state."  <u>See</u> note 4, <u>supra</u>.

[13] <u>See</u> Wis. Stat. § 227.115(3)(a) (explaining that housing impact reports shall contain information about the effect of a proposed agency rule on housing in this state, including the "policies, strategies and recommendations of the state housing strategy plan," the "cost of constructing, rehabilitating, improving or maintaining single family or multifamily dwellings, the "purchase price of housing," the "cost and availability of financing to purchase or develop housing," and "housing costs," as defined in Wis. Stat. § 560.9801(3)(a) and (b)).

The state housing strategy plan, a comprehensive five-year housing strategy plan, is governed by Wis. Stat. § 560.9802. The plan is submitted to the governor, the legislature, and the federal Department of Housing and Urban Development.

¶26 The proposed wind energy rules were then subject to a lengthy legislative review process.[14]

¶27 The Senate Committee on Commerce, Utilities, Energy and Rail considered the proposed wind energy rules at a Committee hearing held on October 13, 2010. At the hearing, lobbyists and members of the public offered criticism and suggested changes to the proposed rules. Representatives from the Wisconsin Realtors Association and the Wisconsin Towns Association, two of the plaintiffs in the present case, were among those who shared their perspectives with the Senate Committee.

¶28 Based on its review of the proposed rules and the testimony presented, the Senate Committee voted to return the proposed rules to the Public Service Commission for further consideration and potential modification.

¶29 In a letter to the Public Service Commission dated November 30, 2010, Senator Jon Erpenbach, a member of the Senate Committee, "share[d] some perspective as to why" the proposed rules were being returned to the Public Service Commission. The letter summarizes the concerns raised by various parties at the Senate Committee hearing, including the concerns raised by the Wisconsin Realtors Association and the Wisconsin Towns Association. The letter then states: "I think the above

---

[14] See Wis. Stat. § 227.19 (governing legislative review of proposed administrative rules).

11

outline gives the [Public Service] Commission a number of particular issues to re-examine within the rule[s]."

¶30 Senator Erpenbach's letter is silent about the failure to file a housing impact report and says nothing about the effect of the proposed wind energy rules on property values or on housing generally.

¶31 In response to the legislature's concerns, the Public Service Commission modified the proposed rules. The rules were resubmitted to the legislature on December 9, 2010.

¶32 On February 28, 2011, after the legislature's review period expired, the Public Service Commission promulgated its wind energy rules by publication in the Wisconsin Administrative Register. The rules, codified as Wis. Admin. Code ch. PSC 128, were to take effect the next day.

¶33 On the first day the rules became effective (March 1, 2011), the Joint Committee for Review of Administrative Rules suspended application of the rules pursuant to Wis. Stat. § 227.26(2)(d).[15]

¶34 Suspension of a rule is temporary unless the rule is repealed.[16] Wisconsin Admin. Code ch. PSC 128 was not repealed. Accordingly, Wis. Admin. Code ch. PSC 128 took effect on March

---

[15] Wisconsin Stat. § 227.26(2)(d), titled "Temporary suspension of rules," provides that the Joint Committee for Review of Administrative Rules "may suspend any rule by a majority vote of a quorum of the committee. . . ."

[16] See Wis. Stat. § 227.26(2)(i) (governing the repeal of a suspended rule).

16, 2012. Nearly three years had elapsed since the legislature had initially directed the Public Service Commission to promulgate rules governing wind energy systems.

¶35 On June 6, 2012, WRA filed a lawsuit in the circuit court (the subject of this review), seeking a declaration under Wis. Stat. § 227.40(4)(a) that Wis. Admin. Code ch. PSC 128 is invalid because it was promulgated without complying with statutory rule-making procedures

¶36 Both WRA and the Public Service Commission filed motions for summary judgment. The circuit court heard the motions on April 29, 2013. At the conclusion of the hearing, the circuit court granted the Public Service Commission's motion for summary judgment, stating:

> I'm satisfied, when you look at the exact wording of the rule of 227.015 [sic], "If a proposed rule directly or substantially affects the development, construction costs, or availability of housing in the State," and it goes on, I'm satisfied that these wind siting rules——wind turbine siting rules do not and that there was no requirement to have a report.

¶37 In an unpublished decision, the court of appeals affirmed the circuit court's summary judgment ruling. The court of appeals reasoned as follows:

> Wisconsin Stat. § 227.115(2) requires a housing impact report only when a proposed rule "directly or substantially affects the development, construction, cost, or availability of housing in this state[.]" . . . Although neither the [Public Service] Commission nor the wind siting council explicitly addressed § 227.115(2), both entities clearly found that wind energy systems do not substantially affect property values. Based on that finding, the [Public Service] Commission could reasonably conclude its

13

proposed rules . . . would not directly or substantially affect the development, construction, cost, or availability of housing in Wisconsin.

. . . .

We must . . . presume that [Wis. Admin. Code ch.] PSC 128 was duly promulgated and that the [Public Service Commission] complied with Wis. Stat. § 227.115(2). In other words, we must presume no housing impact report was required . . . .[17]

II

¶38 We review the summary judgment in favor of the Public Service Commission using the same standards and methods applied by the circuit court.[18] Under Wis. Stat. § 802.08(2), a moving party is entitled to summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.

¶39 In the instant case, the parties do not dispute the facts. The instant case raises only a question of law, namely whether the wind energy rules were promulgated by the Public Service Commission without compliance with statutory rule-making procedures.[19] More specifically, the question is whether under

---

[17] Wis. Realtors Ass'n v. Pub. Serv. Comm'n, No. 2013AP1407, unpublished slip op., ¶¶12-13 (Wis. Ct. App. Mar. 25, 2014).

[18] Pawlowski v. Am. Family Mut. Ins. Co., 2009 WI 105, ¶15, 322 Wis. 2d 21, 777 N.W.2d 67.

[19] See Wis. Stat. § 227.40(4)(a) (providing that the court shall declare an administrative rule invalid if it finds that (1) the rule violates constitutional provisions; (2) the rule exceeds the statutory authority of the agency; or (3) the rule was promulgated without compliance with statutory rule-making procedures).

Wis. Stat. § 227.115(2), the Department of Commerce was required as a matter of law to prepare a housing impact report before Wis. Admin. Code ch. PSC 128 was submitted to the Legislative Council staff for review.    As WRA acknowledges, the interpretation and application of statutes ordinarily present questions of law this court decides independently of the circuit court and the court of appeals, but benefitting from their analyses.[20]

### III

¶40  Before addressing whether a housing impact report was required as a matter of law for Wis. Admin. Code ch. PSC 128, we set forth the statutory framework within which this dispute arises.

¶41  The instant case involves the 2009-10 version of the Wisconsin Statutes.  We caution that the statutory landscape of agency rule-making has since changed.  See 2011 Wis. Act 21. One commentator has summarized these changes as follows:

> 2011 Wisconsin Act 21 significantly changes how administrative rules are promulgated.  Among other things, it narrows state agencies' rule-making authority, gives the governor new powers to approve or prevent the adoption of rules, expands the economic-impact-analysis requirement to all agencies, and

---

[20] Brown v. LIRC, 2003 WI 142, ¶11, 267 Wis. 2d 31, 671 N.W.2d 279.

expands venue in declaratory judgment actions to all counties.[21]

¶42 None of the changes enacted in 2011 are at issue in the instant case. Thus, we turn to the 2009-10 statutes that govern the present dispute.

¶43 We previously set forth the statutory provision that directs the Public Service Commission to promulgate rules specifying the restrictions a political subdivision may impose on the installation or use of a wind energy system. See Wis. Stat. § 196.378(4g)(b), set forth in full at ¶15, above. The Public Service Commission adopted Wis. Admin. Code ch. PSC 128, the wind energy rules at issue, pursuant to this statutory authority.

¶44 The promulgation of a rule by the Public Service Commission and judicial review of a rule promulgated by the Public Service Commission are both governed by Chapter 227 of the Wisconsin Statutes (titled "Administrative Procedure and Review"). Several statutory provisions within this chapter are relevant to the instant case. We set them forth in turn.

¶45 Wisconsin Stat. § 227.40(1) provides that the exclusive method for judicial review of the validity of an

---

[21] Ronald Sklansky, Changing the Rules on Rulemaking, Wis. Lawyer, Aug. 2011, at 10, available at http://www.wisbar.org/newspublications/wisconsinlawyer/pages/wisconsin-lawyer.aspx?Volume=84&Issue=8.

For a challenge to 2011 Wis. Act 21, see Coyne v. Walker, 2015 WI App 21, 361 Wis. 2d 225, ___ N.W.2d ___ (petition for review filed Mar. 20, 2015).

agency rule is a declaratory judgment action challenging the rule filed in the circuit court. The text of Wis. Stat. § 227.40(1) is as follows: "[T]he exclusive means of judicial review of the validity of a rule shall be an action for declaratory judgment as to the validity of such rule brought in the circuit court . . . ."[22]

¶46 WRA sought declaratory relief in the instant case pursuant to this statutory provision.

¶47 When a declaratory judgment action challenging a rule is filed, Wis. Stat. § 227.40(4)(a) governs the limited circumstances under which a court grants relief. Under Wis. Stat. § 227.40(4)(a), a court shall declare a challenged rule invalid if it finds that (1) the rule violates constitutional provisions; (2) the rule exceeds the statutory authority of the agency; or (3) the rule was promulgated without compliance with statutory rule-making procedures.

¶48 Wisconsin Stat. § 227.40(4)(a) states in full as follows: "In any proceeding pursuant to this section for judicial review of a rule, the court shall declare the rule invalid if it finds that it violates constitutional provisions or exceeds the statutory authority of the agency or was

---

[22] See also Wis. Stat. § 227.01(13) (defining "rule" for purposes of Wis. Stat. ch. 227 as "a regulation, standard, statement of policy or general order of general application which has the effect of law and which is issued by an agency to implement, interpret or make specific legislation enforced or administered by the agency or to govern the organization or procedure of the agency").

17

promulgated without compliance with statutory rule-making procedures."

¶49 WRA does not assert that Wis. Admin. Code ch. PSC 128 violates constitutional provisions or exceeds the statutory authority of the Public Service Commission.[23]  Instead, WRA describes its challenge to Wis. Admin. Code ch. PSC 128 as a "facial challenge to the rule[s]," arguing only that the rules were promulgated without compliance with statutory rule-making procedures.

¶50 Thus, we continue by setting forth the statutory rule-making procedures that are relevant to the instant case.

¶51 Wisconsin Stat. § 227.20(1) requires an agency promulgating a rule to file a certified copy of the rule it is promulgating with the Legislative Reference Bureau.[24]  The statute provides:  "An agency shall file a certified copy of each rule it promulgates with the legislative reference bureau.

---

[23] The Public Service Commission clearly had statutory authority to promulgate Wis. Admin. Code ch. PSC 128.  Several provisions within Wis. Stat. ch. 196 (titled "Regulation of Public Utilities") authorize the Public Service Commission to promulgate rules governing public utilities.  The provision relevant here, which we discussed previously, is Wis. Stat. § 196.378(4g)(b) (directing the Public Service Commission to promulgate rules governing wind energy systems).

[24] The Legislative Reference Bureau is a nonpartisan bureau established by the legislature to provide "reference services" to the legislature, other government officials, and the public. See Wis. Stat. § 13.92.

No rule is valid until the certified copy has been filed. . . ."[25]

¶52  The Public Service Commission filed a certified copy of the rules at issue with the Legislative Reference Bureau.

¶53  Filing a certified copy of a rule with the Legislative Reference Bureau gives rise to a legislatively enacted presumption that the process by which the rules were promulgated was proper.  More specifically, Wis. Stat. § 227.20(3) creates a presumption that a rule filed with the Legislative Reference Bureau was "duly promulgated" and that "all of the rule-making procedures required by [Chapter 227] were complied with."

¶54  The full text of Wis. Stat. § 227.20(3) is as follows:

(3)  Filing a certified copy of a rule with the legislative reference bureau creates a presumption of all of the following:

(a)  That the rule was duly promulgated by the agency.

(b)  That the rule was filed and made available for public inspection on the date and time endorsed on it.

(c)  That all of the rule-making procedures required by this chapter were complied with.

(d)  That the text of the certified copy of the rule is the text as promulgated by the agency.

¶55  Chapter 227 of the Wisconsin Statutes does not discuss this presumption further.

---

[25] Wis. Stat. § 227.20(1).

¶56  Finally, we return to the statute with which we began: Wis. Stat. § 227.115(2), which governs housing impact reports. The full text of Wis. Stat. § 227.115(2) is as follows:

> **(2) Report on rules affecting housing.**  If a proposed rule directly or substantially affects the development, construction, cost, or availability of housing in this state, the department [of administration] shall prepare a report on the proposed rule before it is submitted to the legislative council staff under s. 227.15.  The department may request any information from other state agencies, local governments or individuals or organizations that is reasonably necessary for the department to prepare the report.  The department shall prepare the report within 30 days after the rule is submitted to the department.

¶57  These statutes provide the foundation for our analysis of the legal issue presented.

IV

¶58  As previously explained, the issue presented is whether the wind energy rules were promulgated without compliance with statutory rule-making procedures, that is, whether the rules were promulgated without a housing impact report in violation of the law.

¶59  We decide this issue as follows.

¶60  First, we explain that because there is a legislatively enacted presumption that the wind energy rules were duly promulgated and that all statutory rule-making procedures were complied with, and because WRA is the party challenging the validity of the rules, WRA bears the burden of proof.  WRA must prove that a housing impact report was required

as a matter of law for the promulgation of Wis. Admin. Code ch. PSC 128.

¶61  Second, we conclude that WRA has not fulfilled its burden of proving that as a matter of law, Wis. Admin. Code ch. PSC 128 was promulgated without compliance with statutory rule-making procedures.

¶62  Third, and finally, we explain that this court's respect for the doctrine of separation of powers and the role of the legislature counsels against our invalidating a chapter of agency rules that survived the statutorily prescribed process of legislative review.

¶63  For these reasons, we uphold Wis. Admin. Code ch. PSC 128 against WRA's challenge and declare on the basis of the record before us that the rules at issue were not promulgated without compliance with statutory rule-making procedures.

A

¶64  Because WRA contests what showing it must make in the instant case, we begin by explaining that WRA has the burden to prove that a housing impact report was required as a matter of law for Wis. Admin. Code ch. PSC 128.

¶65  The Public Service Commission stresses that it filed a certified copy of Wis. Admin. Code ch. PSC 128 with the Legislative Reference Bureau and therefore has the benefit of the statutory presumption that it complied with all statutory rule-making procedures.

¶66  The text of Wis. Stat. § 227.20(3) directs us to presume that the rule was duly promulgated by the agency and

21

that all statutory rule-making procedures have been followed, including those pertaining to the preparation of a housing impact report.  The statute apparently creates a rebuttable presumption, similar in operation to the generally recognized rebuttable presumption of the constitutionality of a statute; a court is to presume that the agency that promulgated the rule followed the statute regarding housing reports, but a party challenging the rule may rebut that presumption.  The statute also requires courts to respect the legislature's role in reviewing and approving agency rules by presuming the validity of rules that have survived the legislature's scrutiny.

¶67  In any event, as the party challenging the validity of the wind energy rules, WRA has the burden of proving the invalidity of the rules.[26]  Thus, even without the statutory presumption, WRA has the burden to prove that a housing impact report was required as a matter of law for Wis. Admin. Code ch. PSC 128.

B

¶68  WRA attempts to meet its burden of proof by setting forth unconvincing interpretations of Wis. Stat. § 227.115(2)

---

[26] "The burdens of pleading and proof with regard to most facts have been and should be assigned to the plaintiff who generally seeks to change the present state of affairs and who therefore naturally should be expected to bear the risk of failure of proof or persuasion."  2 Kenneth S. Brown, McCormick on Evidence § 337, at 648 (7th ed. 2013).  See also Loeb v. Board of Regents, 29 Wis. 2d 159, 164, 138 N.W.2d 227 (1965); Currie v. DILHR, 210 Wis. 2d 380, 387, 565 N.W.2d 253 (Ct. App. 1997).

(governing housing impact reports) and Wis. Stat. § 196.378(4g)(b) (directing the legislature to promulgate wind energy rules).

¶69 WRA first contends that a housing impact report is required under Wis. Stat. § 227.115(2) whenever a proposed rule relates to housing and that rules promulgated pursuant to Wis. Stat. § 196.378(4g)(b) necessarily relate to housing. WRA further argues that under Wis. Stat. § 227.115(5), the Public Service Commission was required to, but did not, make an explicit determination of whether a housing impact report was required.

¶70 We examine these arguments in turn.

¶71 WRA asserts that in the context of Wis. Stat. § 227.115(2), which requires the preparation of a housing impact report for proposed rules that directly or substantially affect the development, construction, cost, or availability of housing in this state, "the word 'affect' should be interpreted to mean 'concern' or 'deal with.'"[27]

¶72 WRA does not attempt to define the meaning of the other words in the statute. WRA does not explain what the phrase "directly or substantially" means, what it means to affect the "cost" of housing, or what it means to affect housing "in this state."

---

[27] WRA's brief at 36.

23

¶73 WRA implies, however, that the housing impact report requirement is far-reaching and that Wis. Stat. § 227.115(2) mandates the preparation of a housing impact report for all proposed rules that may in any way affect any kind of housing in the state.

¶74 With this expansive interpretation of Wis. Stat. § 227.115(2) in mind, WRA next contends that any and all rules promulgated pursuant to Wis. Stat. § 196.378(4g)(b), which directs the Public Service Commission to promulgate wind energy rules, require a housing impact report.[28] WRA reasons that rules promulgated pursuant to Wis. Stat. § 196.378(4g)(b) will necessarily "concern" or "deal with" housing because such rules are intended to provide reasonable protection from the health effects of wind turbines, because "improper [wind turbine] setback[s] could unreasonably affect the health of those living near wind turbines,"[29] and because such unreasonable health effects could in turn affect property values.[30]

¶75 WRA also reasons that rules promulgated pursuant to Wis. Stat. § 196.378(4g)(b) will necessarily "concern" or "deal with" housing because such rules limit the ability of local

---

[28] "On its face, Wis. Stat. § 196.378(4g)(b) directed the PSC to create a rule that the Legislature expected would 'affect housing' in this state." WRA's brief at 18.

[29] WRA's brief at 15.

[30] "Logically, if living in houses located too close to wind turbines would be unhealthy, that knowledge would affect the desirability and value of such homes." WRA's brief at 38.

governmental units to regulate the installation and use of wind turbines in their communities for the purpose of protecting housing. Thus, in WRA's view, the content of the rules established pursuant to Wis. Stat. § 196.378(4g)(b) is irrelevant; a housing impact report is required no matter what the rules provide.

¶76 Based on WRA's interpretation of these two statutes, WRA concludes that all wind energy rules have the potential to affect property values and, consequently, that a housing impact report was required for the specific wind energy rules at issue.

¶77 WRA's reasoning is not convincing.

¶78 First, WRA seems to view Wis. Stat. § 227.115(2) as requiring a housing impact report whenever a proposed rule in any way relates to housing. This reading of the statute ignores the statutory text. The statute uses the phrase "directly or substantially," which demonstrates that not just any effect will trigger the housing impact report requirement. WRA reads this phrase out of the statute.

¶79 The court of appeals explained that "a housing impact report is not required simply because the subject matter of a proposed rule relates to housing, or because the rule tangentially affects housing in some way."[31] We agree. The ordinary meaning of the phrase "directly or substantially affects" is not "affects in any way" or "relates to in some

---

[31] Wis. Realtors Ass'n v. Pub. Serv. Comm'n, No. 2013AP1407, unpublished slip op., ¶14 (Wis. Ct. App. Mar. 25, 2014).

way," as WRA seems to believe. Wisconsin Stat. § 227.115(2) requires something more.

¶80 The drafting history of Wis. Stat. § 227.115(2) supports our interpretation of the housing impact report requirement. During the drafting process, the words "directly or indirectly" were replaced with the words "directly or substantially." See 1995 A.B. 384, Assembly Substitute Am. 1. We agree with the court of appeals that this modification of the bill's language suggests that the legislature did not intend for a housing impact report to be prepared every time a proposed rule has some indirect or incidental effect on housing.

¶81 WRA's interpretation of Wis. Stat. § 196.378(4g)(b), which directs the Public Service Commission to promulgate wind energy rules, is equally implausible. Nothing in Wis. Stat. § 196.378(4g)(b) states explicitly or implicitly that rules governing wind energy systems will necessarily directly or substantially affect the development, construction, cost, or availability of housing in this state, such that a housing impact report will be required.

¶82 Wisconsin Stat. § 196.378(4g)(b) instructs the Public Service Commission to develop rules that "provide reasonable protection from any health effects . . . associated with wind energy systems." (Emphasis added.) There is no mention in Wis. Stat. § 196.378(4g)(b) of protecting housing generally or of protecting property values specifically. See Wis. Stat. § 196.378(4g)(b), set forth in full at ¶15, above.

26

¶83 A review of Wis. Stat. § 13.099(2) supports our conclusion that rules promulgated pursuant to Wis. Stat. § 196.378(4g)(b) do not necessarily require a housing impact report.

¶84 Wisconsin Stat. § 13.099(2) requires a housing impact report for any bill introduced in the legislature that "directly or substantially affects the development, construction, cost or availability of housing in this state . . . ." Thus, Wis. Stat. § 13.099(2) creates a housing impact report requirement for bills similar to the housing impact report requirement for proposed rules.

¶85 When the legislature introduced the bill that was subsequently enacted as Wis. Stat. § 196.378(4g)(b), it did not request a housing impact report and no housing impact report was prepared. The strong, unrebutted implication is that the legislature did not consider introduction of the bill that became Wis. Stat. § 196.378(4g)(b) (or the wind energy rules that would be promulgated thereunder) as "directly or substantially affect[ing] the development, construction, cost or availability of housing in this state."

¶86 There is, in sum, no foundation for WRA's assertion that the legislature "expected" the wind energy rules promulgated pursuant to Wis. Stat. § 196.378(4g)(b) to necessarily require a housing impact report under Wis. Stat. § 227.115(2). WRA's interpretations of Wis. Stat. §§ 227.115(2) and 196.378(4g)(b) are not cogent.

¶87 We turn next to WRA's argument that the wind energy rules were necessarily promulgated without compliance with statutory rule-making procedures because the Public Service Commission was required to, but did not, make an explicit determination of whether a housing impact report was required.

¶88 According to WRA, the record shows that during the time the Public Service Commission was engaged in the promulgation of Wis. Admin. Code ch. PSC 128, neither the Public Service Commission itself nor the Wind Siting Council ever discussed or voted upon whether a housing impact report was necessary. WRA apparently believes that an explicit, on-the-record determination by the Public Service Commission regarding whether a housing impact report is needed was required before the wind energy rules could be promulgated.

¶89 WRA does not, however, point to any statutory provision mandating such an explicit determination by the Public Service Commission or any other entity, and we find none. We decline to read a procedural requirement into the statutes that the legislature opted not to impose.[32]

¶90 The absence of an explicit, on-the-record determination regarding whether a housing impact report is required is therefore not dispositive and it does not persuade

---

[32] "We should not read into the statute language that the legislature did not put in." State v. Matasek, 2014 WI 27, ¶20, 353 Wis. 2d 601, 846 N.W.2d 811 (quoting Brauneis v. LIRC, 2000 WI 69, ¶27, 236 Wis. 2d 27, 612 N.W.2d 635).

us that the wind energy rules were promulgated without compliance with statutory rule-making procedures.

¶91 In sum, WRA's interpretations of Wis. Stat. §§ 227.115(2) and 196.378(4g)(b) are unconvincing, and we are not persuaded that the Public Service Commission was required to make an on-the-record determination regarding the necessity of a housing impact report. WRA has not fulfilled its burden of proving that a housing impact report was required as a matter of law for Wis. Admin. Code ch. PSC 128.

C

¶92 We turn to one final consideration that weighs against our granting WRA relief in the present case.

¶93 Although WRA recognizes that Wis. Admin. Code ch. PSC 128 was promulgated after an active and lengthy legislative review process, WRA nevertheless asks this court to declare that the failure to submit a housing impact report renders Wis. Admin. Code ch. PSC 128 invalid.

¶94 According to WRA, the Public Service Commission "usurped the Legislature's power when it decided that it had adequately protected the public [through Wis. Admin. Code ch. PSC 128] and that no second opinion [in the form of a housing impact report] [wa]s therefore required."[33]

¶95 Like WRA, we are concerned about usurpation of the legislative function. We conclude, however, that if we granted

---

[33] WRA's brief at 15.

29

WRA its requested relief in the instant case, we would be usurping the legislative function by striking down rules that survived the legislature's scrutiny.

¶96 The separation of powers doctrine informs us in this matter. "The Wisconsin constitution creates three separate co-ordinate branches of government, no branch subordinate to the other, no branch to arrogate to itself control over the other except as is provided by the constitution, and no branch to exercise the power committed by the constitution to another."[34]

¶97 Chapter 227 of the Wisconsin Statutes governs agency rule-making and legislative review of agency rules, among other things. These statutes comprise a system devised by the legislature itself to govern the legislature's role in and oversight of agency rule-making. Chapter 227 provides for expansive legislative review of rules both before their promulgation[35] and after their promulgation.[36]

¶98 Pursuant to these statutes, the legislature has the opportunity to request modifications to proposed rules,[37] to

---

[34] State v. Holmes, 106 Wis. 2d 31, 42, 315 N.W.2d 703 (1982).

[35] See Wis. Stat. § 227.19 ("Legislative Review Prior to Promulgation").

[36] See Wis. Stat. § 227.26 ("Legislative Review After Promulgation; Joint Committee for Review of Administrative Rules").

[37] See Wis. Stat. § 227.19(4)(b); Wis. Stat. § 227.19(4)(d); Wis. Stat. § 227.19(5)(b).

prevent the promulgation of proposed rules,[38] to temporarily suspend rules that have been promulgated,[39] and to repeal promulgated rules altogether.[40]

¶99 In light of the statutes' providing for expansive legislative review of rules and limited judicial review of rules, it is incumbent upon the court to exercise both deference and restraint in the present case.

¶100 The legislature did not merely passively permit the promulgation of Wis. Admin. Code ch. PSC 128. On the contrary, the legislature held a hearing on Wis. Admin. Code ch. PSC 128 prior to its promulgation and then sent the rules back to the Public Service Commission for further consideration.

¶101 WRA had an opportunity to register its objections to the rules before the legislature. The rules were modified in response to the legislature's concerns, which encompassed WRA's concerns.

¶102 Even after its promulgation, Wis. Admin. Code ch. PSC 128 was temporarily suspended for yet another round of legislative review.

¶103 In sum, the legislature had ample opportunity to express reservations about the proposed wind energy rules, to request changes to the proposed rules, to prevent promulgation

---

[38] Wis. Stat. § 227.19(5)(e); Wis. Stat. § 227.19(5)(f).

[39] Wis. Stat. § 227.26(2)(d).

[40] Wis. Stat. § 227.26(2)(f); Wis. Stat. § 227.26(2)(i).

of the proposed rules, and to suspend and even repeal the rules after they were promulgated.

¶104 The fact is, after a lengthy and active period of review, the legislature allowed the rules set forth in Wis. Admin. Code ch. PSC 128 to go into effect.

¶105 The Public Service Commission's wind energy rules survived the legislative review process and now have "the force and effect of law in Wisconsin."[41]

¶106 In the instant case, the court's role is limited. We may determine only whether the rules were promulgated without compliance with statutory rule-making procedures. WRA has failed to meet its burden of proving non-compliance.

¶107 Nonetheless, our opinion in the instant case should not be read to imply that WRA's frustration with the process by which Wis. Admin. Code ch. PSC 128 was promulgated is entirely unwarranted.

¶108 WRA stated at oral argument that it greatly values Wis. Stat. § 227.115(2). In WRA's view, the second opinion a housing impact report provides to the legislature constitutes a necessary check in the process of promulgating a rule that affects housing.

¶109 WRA also stated at oral argument that to its knowledge, no housing impact report has ever been requested or

---

[41] See State ex rel. Staples v. DHSS, 115 Wis. 2d 363, 367, 340 N.W.2d 194 (1983).

produced under Wis. Stat. § 227.115(2).[42]  Thus, WRA believes a critical step in the process of promulgating a rule that affects housing has been routinely ignored and has been circumvented in the instant case.

¶110 WRA's concerns, while understandable, do not persuade us to grant it relief.

¶111 We conclude that WRA has not demonstrated that a housing impact report was required as a matter of law for Wis. Admin. Code ch. PSC 128.  The texts of the governing statutes and the wind energy rules do not demonstrate as a matter of law that the rules directly or substantially affect the development, construction, cost, or availability of housing in this state.

¶112 We further conclude that invalidating Wis. Admin. Code ch. PSC 128 under the circumstances presented in the instant case would infringe on the role of the legislature, which we decline to do.

¶113 Accordingly, WRA's challenge to Wis. Admin. Code ch. PSC 128 fails.

*By the Court.*—The decision of the court of appeals is affirmed.

---

[42] We, too, have been unable to confirm that any housing impact report has ever been prepared pursuant to Wis. Stat. § 227.115(2).

33

¶114 PATIENCE DRAKE ROGGENSACK, C.J. *(dissenting).* Wisconsin Realtors Association, Wisconsin Builders Association, Wisconsin Towns Association, Jon E. Morehouse, Sr. and Ervin E. Selk (hereinafter Wisconsin Realtors) challenge the Public Service Commission's (the Commission) promulgation of Wis. Admin. Code ch. PSC 128 because the Commission did not follow the required rule-making procedure set out in Wis. Stat. § 227.115(2) (2009-10).[1] I conclude that the Commission was obligated, as a matter of law, to obtain a § 227.115(2) housing report because ch. PSC 128 directly affects housing. The Commission failed to obtain a § 227.115(2) housing report; therefore, ch. PSC 128 is invalid. Wis. Stat. § 227.40(4)(a). Accordingly, I respectfully dissent from the majority opinion.

## I.  BACKGROUND

¶115 This case reaches us on competing motions for summary judgment in regard to whether Wis. Admin. Code ch. PSC 128 was lawfully promulgated. Chapter PSC 128 regulates wind energy systems. In relation to housing, it establishes the following: maximum setbacks of wind turbines from dwellings; permissible wind turbine noise levels, as measured at nearby dwellings; the number of hours per year during which dwellings can be subjected to shadow flicker cast by wind turbines.

¶116 The legislature was concerned that wind turbines may affect both the health of Wisconsin citizens and housing. Wis.

---

[1] All subsequent references to the Wisconsin Statutes are to the 2009-10 version unless otherwise indicated.

1

Stat. § 196.378(4g)(e); Wis. Stat. § 227.115(2). However, the legislature did not want each local unit of government imposing its own regulations, which could unnecessarily impede the development of wind energy in Wisconsin. Accordingly, the legislature directed the Commission to promulgate rules that would reasonably protect people in their homes from health effects and reduced property values that could result from nearby wind turbines, while at the same time creating a uniform system of regulations for wind energy systems throughout the state. § 196.378(4g)(b).

¶117 In promulgating Wis. Admin. Code ch. PSC 128, the Commission was required to obtain a comprehensive housing report from the Department of Commerce[2] if its proposed rule "directly or substantially affects the development, construction, cost, or availability of housing in this state." Wis. Stat. § 227.115(2). The required housing report was to be prepared "before [the proposed rule] is submitted to the legislative council staff under s. 227.15." Id.

¶118 The record and arguments of the parties reveal that the Commission never requested or obtained the required housing report from the Department. Apparently, the Commission never considered its obligations under Wis. Stat. § 227.115(2) because § 227.115 is not listed in the Commission's "Plain Language

---

[2] At the time Wis. Admin. Code ch. PSC 128 was created, the Department of Commerce was to have prepared the housing report. Wis. Stat. § 227.115(1)(a). The current version of § 227.115(1)(a) (2013-14) requires that the report be prepared by the Department of Administration.

Analysis" that it submitted to the Legislature and in which the Commission mentioned other statutes.

## II. DISCUSSION

¶119 The majority opinion employs three methods by which it permits the Commission to ignore the command of the legislature. First, it misunderstands Wisconsin Realtors' argument, and therefore, never addresses it. Second, without deciding what Wis. Stat. § 227.115(2) means, the majority opinion chooses not to apply § 227.115(2) to Wis. Admin. Code ch. PSC 128.[3] In so doing, it ignores the policy choice of the legislature, which requires a housing report if a Commission rule directly or substantially affects housing. Third, the majority opinion employs Wis. Stat. § 227.20(3) to create a presumption that the Commission followed all applicable rule-making procedures based on the Commission's filing of a certified copy of ch. PSC 128 with the Legislative Reference Bureau.[4]

## A. Standard of Review

¶120 We review summary judgment granted to the Commission by the circuit court and affirmed by the court of appeals. We review independently, as a matter of law, whether summary judgment was properly granted. Grygiel v. Monches Fish & Game Club, Inc., 2010 WI 93, ¶12, 328 Wis. 2d 436, 787 N.W.2d 6. Our review centers on interpretation and application of statutes. Statutory interpretation and application present questions of

---

[3] Majority op., ¶7.

[4] Id., ¶¶66-67.

law for our independent review; however, we benefit from the reasoning of other courts' decisions. Richards v. Badger Mut. Ins. Co., 2008 WI 52, ¶14, 309 Wis. 2d 541, 749 N.W.2d 581. This controversy also involves the interpretation and application of administrative rules. These too present questions of law for our independent review. Brown v. Brown, 177 Wis. 2d 512, 516, 503 N.W.2d 280 (Ct. App. 1993).

## B. Rule Promulgation

### 1. "Directly affects"

¶121 All parties agree that if Wis. Admin. Code ch. PSC 128 directly affects housing, the Commission was required to obtain a housing report from the Department before it filed the rule with the Legislative Reference Bureau. The parties' dispute centers on the meaning of "directly affects" in Wis. Stat. § 227.115(2). This issue is clouded in the majority opinion because it never bothers to interpret § 227.115(2) and tell the reader what "directly affects" means. It is also clouded by the majority opinion's repeated mischaracterization of Wisconsin Realtors' argument.[5]

¶122 Determination of the meaning of "directly affects" is informed by the meaning of Wis. Stat. § 196.378(4g)(b) because § 196.378(4g)(b) is the enabling legislation for Wis. Admin.

---

[5] For example, the majority asserts, that Wisconsin Realtors "contends that a housing impact report is required under Wis. Stat. § 227.115(2) whenever a proposed rule relates to housing." Majority op., ¶69. That is not an accurate representation of Wisconsin Realtors' contention. Rather, Wisconsin Realtors contends that a housing report is required when a Commission's rule directly or substantially affects housing.

Code ch. PSC 128. Therefore, the Commission was required to follow the legislative directives of § 196.378(4g)(b) when it promulgated ch. PSC 128. Wis. Hosp. Ass'n v. Natural Res. Bd., 156 Wis. 2d 688, 706, 457 N.W.2d 879 (Ct. App. 1990) (explaining that on review "court[s] should identify the elements of the enabling statute and match the rule against those elements"). The meaning of Wis. Stat. § 227.115(2) also informs the controversy before us because of the proximity of wind turbines to housing.

¶123 I interpret Wis. Stat. § 196.378(4g)(b) and Wis. Stat. § 227.115(2) to ascertain their meaning. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶43, 271 Wis. 2d 633, 681 N.W.2d 110. Scope, context and purpose are relevant to a plain meaning analysis. Id., ¶48. I also note that "[a]n administrative agency has only those powers which are expressly conferred or can be fairly implied from the statutes under which it operates." Oneida Cnty. v. Converse, 180 Wis. 2d 120, 125, 508 N.W.2d 416 (1993).

¶124 Wisconsin Stat. § 227.115(2) addresses rules that affect housing such that, together with Wis. Stat. § 196.378(4g)(b), they establish requirements for the Commission's promulgation of Wis. Admin. Code ch. PSC 128. Furthermore, because these statutes bear on the same subject matter, here, the promulgation of administrative rules that regulate wind turbines, they are construed in that context so that they are consistent with one another. McDonough v. DWD, 227 Wis. 2d 271, 279, 595 N.W.2d 686 (1999). Accordingly, the

5

Commission was required to have exercised its rule-making authority within the framework established by these statutes.

¶125 I begin with the words chosen by the legislature in its enabling legislation. Wisconsin Stat. § 196.378(4g)(b) provides in relevant part:

> The commission shall . . . promulgate rules that specify the restrictions a political subdivision may impose on the installation or use of a wind energy system consistent with the conditions specified in s. 66.0401(1m)(a) to (c). The subject matter of these rules shall include setback requirements that provide reasonable protection from any health effects, including health effects from noise and shadow flicker, associated with wind energy systems. The subject matter of these rules . . . may include . . . set-back distances, maximum audible sound levels, shadow flicker, proper means of measuring noise, interference with radio, telephone, or television signals, or other matters. A political subdivision may not place a restriction on the installation or use of a wind energy system that is more restrictive than these rules.

¶126 The legislative grant of authority to the Commission in Wis. Stat. § 196.378(4g)(b) described the legislature's purpose and topics that the Commission was required to address when promulgating Wis. Admin. Code ch. PSC 128. Section 196.378(4g)(b) plainly states that the rules enacted "shall include setback requirements that provide reasonable protection from any health effects, including health effects from noise and shadow flicker." Section 196.378(4g)(b) also granted the Commission discretionary authority in other areas.

¶127 There are good reasons for the legislature's mandate that the Commission enact setback requirements for wind turbines. It is well known that wind turbines may be harmful to

6

the health of those who live close to them and are sensitive to the noise and shadow flicker they produce. See Roy D. Jeffery, et al., Adverse Health Effects of Industrial Wind Turbines, 59 Canadian Family Physician 473 (2013); Jerry Punch & Richard James, Negative Health Effects of Noise from Industrial Wind Turbines: Some Background, http://www.hearinghealthmatters.org/hearingviews/2014/wind-turbine-health-problems-noise (last visited March 26, 2015).

¶128 Directly connected to legislatively focused health concerns, Wis. Admin. Code § PSC 128.13 establishes siting criteria for wind turbines in regard to setback distance and height requirements; Wis. Admin. Code § PSC 128.14 addresses noise criteria;[6] Wis. Admin. Code § PSC 128.15 addresses shadow flicker.[7] Accordingly, the Commission's application of Wis. Stat. § 196.378(4g)(b) is driven by wind turbines' effects on the health of people who live or work in proximity to wind turbines.

---

[6] Wisconsin Admin. Code § PSC 128.14 provides in relevant part: "[A]n owner shall operate the wind energy system so that the noise attributable to the wind energy system does not exceed 50 dBA during daytime hours and 45 dBA during nighttime hours." § PSC 128.14(3)(a). The determination of noise level is made at "the outside wall nearest to the closest wind turbine." § PSC 128.14(4).

[7] Wisconsin Admin. Code § PSC 128.15(1)(b) and (2) provides in relevant part: "An owner shall design the proposed wind energy system to minimize shadow flicker at a residence or occupied community building . . . [so it] does not cause more than 30 hours per year of shadow flicker."

¶129 Wisconsin Admin. Code § PSC 128.13(1)(a) provides for permissible setbacks, depending on the type of building that is nearby. The largest setback is 1,250 feet. The setback from wind turbines generally is measured as the distance from the wind turbine tower to the nearest point on the foundation of a residence or occupied community building. § PSC 128.13(1)(b).

¶130 The setbacks of Wis. Admin. Code § PSC 128.13 lessen the noise and shadow flicker impacts of wind turbines on residents and real estate that are as far away from the wind turbines as § PSC 128.13(1)(a) provides. Stated otherwise, without consideration of the setbacks of § PSC 128.13, wind turbines could be placed in the middle of residential communities with houses only a few feet away so long as no local ordinance regulated placement.

¶131 Because Wis. Admin. Code ch. PSC 128 prevents placement of wind turbines that are inconsistent with its provisions, ch. PSC 128 lessens the effects of wind turbines on the health of people who reside nearby. Chapter PSC 128 does so by subjecting the housing in which people live to less noise and less shadow flicker. Stated otherwise, §§ PSC 128.13, 128.14 and 128.15 directly affect the levels of noise and shadow flicker that wind turbines inflict on nearby housing.

¶132 The effect of wind turbines on the health of people living nearby was considered by the Wind Siting Council when ch. PSC 128 was enacted. Furthermore, Wis. Stat. § 196.378(4g)(e)

requires periodic review of wind turbines' effects on health.[8] Because wind turbines have the potential to affect the health of those who live nearby, wind turbines also will affect the market for those properties because some buyers will reject the properties because they believe that wind turbines will have a negative effect on their health. See, e.g., Nina Pierpont, Wind Turbine Syndrome: A Report on a Natural Experiment (2009) (available at http://www.windturbinesyndrome.com).

¶133 The legislature recognized that health effects associated with wind turbines may be connected to the distance between wind turbines and housing when it required that setbacks provide "reasonable protection from any health effects." Wis. Stat. § 196.378(4g)(b). As health effects caused by wind turbines also affect the real estate market, the legislature required the Commission to obtain a housing report while it was in the process of promulgating Wis. Admin. Code ch. PSC 128. Wisconsin Stat. § 227.115 specified the findings that the Department was required to make in assessing a proposed rule's effect on housing. Section 227.115(3) provides:

> (a) The report of the department shall contain information about the effect of the proposed rule on housing in this state, including information on the effect of the proposed rule on all of the following:

---

[8] The Wind Siting Council is required to "survey the peer-reviewed scientific research regarding the health impacts of wind energy systems." Wis. Stat. § 196.378(4g)(e); see Wisconsin Wind Siting Council, Wind Turbine Siting-Health Review and Wind Siting Policy Update, 3-4, 14 (2014). The Wind Siting Council addressed health concerns, not housing concerns.

1. The policies, strategies and recommendations of the state housing strategy plan.

2. The cost of constructing, rehabilitating, improving or maintaining single family or multifamily dwellings.

3. The purchase price of housing.

4. The cost and availability of financing to purchase or develop housing.

5. Housing costs, as defined in s. 560.9801(3)(a) and (b).

(b) The report shall analyze the relative impact of the effects of the proposed rule on low- and moderate- income households.

¶134 The legislature required the Commission to request a housing report from the Department if a "proposed rule directly or substantially affects the development, construction, cost, or availability of housing" in Wisconsin. Wis. Stat. § 227.115(2). Section 227.115(2) requires the Commission to do so before the proposed rule is forwarded to the legislative council staff under Wis. Stat. § 227.15.

¶135 Wisconsin Stat. § 227.115(2)'s phrase, "directly or substantially affects," is not defined in § 227.115, nor has it been interpreted in prior cases. However, the phrase "directly affects" has been interpreted in other contexts. For example, Sausen v. Town of Black Creek Bd. of Review, 2014 WI 9, ¶3, 352 Wis. 2d 576, 843 N.W.2d 39, concludes that an assessor's classification of property "directly affects" the property's assessment because of the classification's relationship to statutory percentages of assessment. State v. Long, 2009 WI 36, ¶51, 317 Wis. 2d 92, 765 N.W.2d 557, explains that proof of a

10

prior conviction "directly affects" a liberty interest because such proof is relevant to the term of incarceration to which a defendant may be subjected. City of Appleton v. Town of Menasha, 142 Wis. 2d 870, 879, 419 N.W.2d 249 (1988), concludes that any illegal expenditure of public funds "directly affects" taxpayers because taxpayers suffer a pecuniary loss as a result.

¶136 In each decision, "directly affects" has been defined by a nexus between an act and the interest of a person that is influenced by the act. Accordingly, I conclude that the plain meaning of "directly affects" in Wis. Stat. § 227.115(2) includes an act that has a nexus to housing. That is, in order for a proposed rule to "directly affect" housing, there must be a nexus between the proposed rule and housing.

¶137 As I have explained, Wis. Admin. Code ch. PSC 128 has a nexus to housing due to the setbacks of § PSC 128.13, the decibel noise levels of § PSC 128.14 and the minimization of shadow flicker in § PSC 128.15, all of which regulate wind turbines' effects on nearby housing. Stated otherwise, the plain meaning of "directly affects" in Wis. Stat. § 227.115(2) includes those proposed rules that regulate wind turbine setbacks, noise levels and shadow flicker.

¶138 These obvious nexuses are the core of Wisconsin Realtors' contention from which it concluded that a housing

11

report was required by Wis. Stat. § 227.115(2).[9] Stated otherwise, it is the position of Wisconsin Realtors that § 227.115(2) does not require that a rule have a negative effect on housing before a housing report is required by § 227.115(2).[10] Rather, the legislative threshold for requiring a housing report under § 227.115(2) is triggered whenever housing is "directly affected" by the terms of a proposed rule. I agree with Wisconsin Realtors. The statute says nothing about obtaining a housing report only when a rule negatively or inadequately affects housing.

¶139 Furthermore, Wis. Stat. § 196.378(4g)(b) and Wis. Stat. § 227.115(2) must be read together because they bear on the same subject matter, proposed administrative rules. McDonough, 227 Wis. 2d at 279. When we do so, the nexus between the health effects of wind turbines and housing becomes apparent.

¶140 Wisconsin Admin. Code §§ PSC 128.13, 128.14 and 128.15 directly affect noise levels and shadow flicker to which housing is subjected by the operation of wind turbines. It follows then as a matter of course that the effect of wind turbines on

[9] The majority opinion repeatedly misstates Wisconsin Realtors' position. See majority op., e.g., ¶¶69-76. In so doing, the majority opinion sets up straw men that it can knock down. However, more importantly, this device permits the majority opinion to escape addressing Wisconsin Realtors' actual argument about why Wis. Admin. Code ch. PSC 128 directly affects housing.

[10] If there was ever any doubt, Wisconsin Realtors' position in this regard was clearly stated at oral argument under questioning by the court.

housing is central to carrying out the plain meaning of § 196.378(4g)(b), which required the Commission to draft rules that addressed wind turbines' effects on health. Stated otherwise, housing is central to the Commission's compliance with § 196.378(4g)(b) because it is due to living in nearby housing that the health of Wisconsin residents is most affected by wind turbines. Therefore, if the Commission's rules did not directly affect housing, those rules would have a limited impact on health, contrary to the enabling legislation for ch. PSC 128.

¶141 Both the court of appeals and the majority opinion misunderstand Wisconsin Realtors' argument. For example, the court of appeals said,

> To demonstrate that a housing impact report was required, [Wisconsin Realtors] must show that the setback, noise, and shadow flicker restrictions imposed by PSC 128 are so inadequate that the rules will directly or substantially affect the development, construction, cost, or availability of housing in Wisconsin.

Wis. Realtors Ass'n v. Pub. Serv. Comm'n of Wis., No. 2013AP1407, unpublished slip op., ¶18 (Wis. Ct. App. March 25, 2014).

¶142 However, no showing of inadequacy is required of Wisconsin Realtors under Wis. Stat. § 227.115(2) in order to demonstrate that Wis. Admin. Code ch. PSC 128 directly affects housing. The plain meaning of the words that the legislature chose for Wis. Stat. § 227.115(2) does not require that the rules the Commission proposed be "inadequate" in order for those rules to directly affect housing. All that is required is a

13

nexus between the proposed rules and their effect on housing. It is beyond dispute that ch. PSC 128 has such a nexus.

¶143 Once that threshold is met, a housing report is required. It is the task of the Department, as it prepares the housing report, to assess whether the administrative rules were adequate or inadequate to protect housing. The Department's assessment and report was to be done during the rule-making process. Stated otherwise, the legislature gave the Department the task of assessing whether proposed rules are adequate to protect the housing of people who reside near wind turbines.[11] The legislature did not give that task to persons whose health and property values are impacted by the proposed rule. That was a burden for government to shoulder, which the court of appeals[12] and the majority opinion[13] have mistakenly placed on those Wisconsin residents who live near wind turbines.

---

[11] See supra note 2.

[12] That the court of appeals added words to Wis. Stat. § 227.115(2) and thereby constructed a standard contrary to what the legislature mandated is confirmed by the court's conclusion that "[w]ithout presenting evidence that the restrictions imposed by PSC 128 are insufficient, [Wisconsin Realtors] cannot rebut the presumption that no housing impact report was required." Wis. Realtors Ass'n v. Pub. Serv. Comm'n of Wis., No. 2013AP1407, unpublished slip op., ¶18 (Wis. Ct. App. March 25, 2014).

[13] See majority op., ¶7.

14

2. Presumption

¶144 The majority opinion also concludes that if all else fails, Wis. Admin. Code ch. PSC 128 is saved by the presumption of Wis. Stat. § 227.20(3), which provides in relevant part:

> (3) Filing a certified copy of a rule with the legislative reference bureau creates a presumption of all of the following:
>
> . . . .
>
> (c) That all of the rule-making procedures required by this chapter were complied with.

¶145 I take judicial notice that a certified copy of Wis. Admin. Code ch. PSC 128 was filed with the Legislative Reference Bureau. However, because §§ PSC 128.13, 128.14 and 128.15 directly affect housing, a Wis. Stat. § 227.115(2) housing report was required. All agree that the Commission did not request the Department to prepare a housing report, and the Department provided no such report. Because the Commission was required to request a housing report and did not do so, the presumption of Wis. Stat. § 227.20(3)(c) has been rebutted.

¶146 Furthermore, if governmental agencies could ignore legislative directives simply by filing a certified copy of a proposed rule with the Legislative Reference Bureau, there would be a great temptation for busy agency employees not to bother with fully complying with legislative directives during rule-making. Accordingly, the presumption of Wis. Stat. § 227.20(3)(c) cannot save the Commission's rules that were enacted with disregard for the express directives of the Legislature. See Dane Cnty. v. DHSS, 79 Wis. 2d 323, 331-32,

15

255 N.W.2d 539 (1977) (concluding that Dane County could challenge the manner in which the Department of Health and Social Services had promulgated its rule).

## C. Remedy

¶147 I have concluded that the plain meaning of Wis. Stat. § 227.115(2) required the Commission, as a matter of law, to obtain a housing report from the Department when it promulgated Wis. Admin. Code ch. PSC 128; that it failed to do so and that its failure is not saved by Wis. Stat. § 227.20(3)(c). The question now becomes, what is the remedy for the Commission's failure.

¶148 Wisconsin Realtors began this declaratory judgment action pursuant to Wis. Stat. § 227.40. Therefore, I look to that section's provisions for guidance. Wisconsin Stat. § 227.40(4)(a) states:

> In any proceeding pursuant to this section for judicial review of a rule, the court shall declare the rule invalid if it finds that it violates constitutional provisions or exceeds the statutory authority of the agency or was promulgated without compliance with statutory rule-making procedures.

It is under the last provision: the rule "was promulgated without compliance with statutory rule-making procedures," on which Wisconsin Realtors' claim lies.

¶149 Courts have reviewed other rules that have been promulgated without compliance with rule-making procedures and have held such rules invalid. For example, in Cholvin v. DHFS, 2008 WI App 127, ¶¶32-34, 313 Wis. 2d 749, 758 N.W.2d 118, the court of appeals held a directive that the Department of Health

16

and Family Services had given to Susan Cholvin was invalid because the Department did not employ statutorily required rule-making to promulgate the directive. See also Heritage Credit Union v. Office of Credit Unions, 2001 WI App 213, ¶24, 247 Wis. 2d 589, 634 N.W.2d 593 (explaining that failure to comply with rule-making procedures is one ground for declaring a rule invalid).

¶150 The Commission did not comply with Wis. Stat. § 227.115(2), and as a matter of law, it was required to do so. The plain meaning of Wis. Stat. § 227.40(4)(a) provides the remedy: "the court shall declare the rule invalid." Accordingly, I follow that directive and conclude that ch. PSC 128 is invalid.

### III.  CONCLUSION

¶151 I conclude that the Commission was obligated, as a matter of law, to obtain a Wis. Stat. § 227.115(2) housing report because Wis. Admin. Code ch. PSC 128 directly affects housing.  The Commission failed to obtain a § 227.115(2) housing report; therefore, ch. PSC 128 is invalid.  Wis. Stat. § 227.40(4)(a).  Accordingly, I respectfully dissent from the majority opinion.

¶152 I am authorized to state that Justice ANNETTE KINGSLAND ZIEGLER joins this dissent.